# CHARLESTON.

### WILLIAM G. HAMRICK *et al.*, *v.* WILLIAM H. MCCUTCHEON *et al.*

### (No. 5523)

Submitted April 13, 1926.    Decided April 27, 1926.

1.  OFFICERS—*Forfeiture of Fiscal Office Will Not be Declared Under Statute Relating to Unlawful Expenditures or Contracts, Unless Such Statute is Negligently or Wilfully Violated (Code, c. 28A, § 12).*

    Forfeiture of a fiscal office will not be declared under Sec. 12, Ch. 28A, Code, unless the statute be negligently or wilfully violated.    (p. 487.)

    (Officers, 29 Cyc. p. 1410; Schools and School Districts, 35 Cyc. p. 892.)

2.  EVIDENCE—OFFICERS—*"Negligent Violation of Statute" Relating to Unlawful Expenditures or Contracts is One Occasioned by or Accompanied with Negligent Conduct; Negligent Conduct, Causing or Accompanying Negligent Violation of Statute Relating to Unlawful Expenditures or Contracts by Certain Officers, Must be Established by Evidence, and Will Not be Presumed Because Statute is Violated (Code, c. 28A, § 12).*

    A negligent violation of this statute is one occasioned by or accompanied with negligent conduct.    Such conduct must be established by the evidence and will not be presumed because the statute is violated.    (p. 487.)

    (Evidence, 22 C. J. § 69 [Anno]; Officers, 29 Cyc. p. 1410; Schools and School Districts, 35 Cyc. p. 892.)

3. OFFICERS—SCHOOLS AND SCHOOL DISTRICTS—*"Negligence" in
    Official Conduct is Ordinarily Failure to Use Such Reason-
    able Care and Caution as Would be Expected of Prudent
    Man; Fact That School Board Voted to Construct School
    Building Requiring Expenditure in Excess of Funds Legally
    at its Disposal for Certain Fiscal Years, in Absence of
    Showing That Such Violations of Statutory Duty Were
    Wilful or Negligent, Held Not Cause for Removing Board
    From Office (Code, c. 28A, § 12).*

    Negligence in official conduct is ordinarily the failure to
    use such reasonable care and caution as would be expected
    of a prudent man.   (p. 490.)

    (Officers, 29 Cyc. p. 1410; Schools and School Districts, 35 Cyc.
    p. 892.)

    (NOTE:   Parenthetical references by Editors, C. J.—Cyc Not
      part of syllabi.)

Error to Circuit Court, Webster County.

Action by William G. Hamrick and others, taxpayers of
Fork Lick District of Webster County, against Willliam H.
McCutcheon and others, to remove the defendants from office
as members of the Board of Education of Fork Lick District.
Judgment forfeiting the offices of defendants McCutcheon
and Huffman was rendered, and they bring error.

*Judgment set aside; petition dismissed.*

*E L. Cutlip, Brown, Jackson & Knight,* and *Lon H. Kelly,*
for plaintiffs in error.

*Hoover & Hoover, E. H. Morton, L. T. Eddy,* and *W. S.
Wysong,* for defendants in error.

HATCHER, JUDGE:

The plaintiffs are citizens and taxpayers of Fork Lick Dis-
trict of Webster County.   The defendants are members of the
Board of Education of the district.   This action was brought
in the circuit court of the said county for the purpose of re-
moving the defendants from office.   Sundry charges were
preferred against them, but the circuit court found that the
evidence sustained only charges as to violations of the pro-
visions of Sec. 12, Ch. 28A of the Code.   On July 3, 1925,
the lower court forfeited the offices of defendants McCutch-
eon and Huffman.   The term of office of defendant Nichols

had expired pending the suit and no judgment was found as
to him. From the judgment against them McCutcheon and
Huffman prosecute error here. No cross assignment of error
is made. Therefore the only charges against defendants to be
considered in this court are those upon which they were found
guilty in the lower court.

In 1922 the said Board of Education employed an architect,
and entered into a contract with P. Q. Shrake to construct a
part of a school building. Shrake defaulted in his contract,
and its completion was attempted by two of his bondsmen,
Hoover and Woods. Some work was also done on the build-
ing by J. A. Tincher. During 1923, an alleged contract was
made by the Board with the Virginia School Supply Com-
pany to furnish seats for the new building. In 1924 the
Board employed the Hamilton Plumbing Company to install
a heating plant in the building, and to complete the plumbing.

Sec. 12, Ch. 28A, Code, makes it unlawful for a Board of
Education to make any contract, express or implied, which
involves the expenditure of money in excess of funds legally
at the disposal of such board for the current fiscal year. In
a written opinion the circuit court termed the undertaking
of the Board to erect the new school building ''a commend-
able enterprise'', and found that there had been no waste of
public money, but that the contracts relating to the new build-
ing involved the expenditure of money in excess of the funds
legally at the disposal of the Board for the fiscal years end-
ing in 1923, 1924, and 1925, respectively. The lower court
correctly determined that the offices of defendants could not
be forfeited for these violations unless they were wilful or
negligent. The defendants were acquitted of wilful viola-
tions in the following positive statement: ''These defendants
had no evil designs. They were trying to build up and better
their community. There is no suspicion of personal dis-
honesty as to either of them. The understanding was beyond
their power, and their enthusiasm no doubt caused them to
overreach.'' The circuit court found the defendants guilty
of legal negligence, or negligence *per se.* The reasoning of
the circuit court on this point is: ''Since the errors of the

Board have resulted in the wrongful application of funds, their act must be held to be the proximate cause of the public injury, and therefore negligent as a matter of law." We cannot agree that the statute refers to negligence *per se*. That part of the statute directing the forfeiture of office is as follows: "Whenever any court of competent jurisdiction, shall ascertain or determine that any member of any fiscal body hereinbefore referred to has negligently or wilfully violated any of the provisions of this section, it shall enter an order declaring the office of such member forfeited." If the Legislature had intended that a forfeiture of a fiscal office should be declared upon the mere violation of the statute, it would have so stated. The words *wilfully* and *negligently* would have been superfluous. Since they are used, they must be given full significance. The wilful or negligent violation of the statute necessarily implies a violation growing out of or accompanied by wilful or negligent conduct. The acts of a fiscal officer may be unlawful, but if free from wilfulness or negligence, his office cannot be forfeited under this statute. The circuit court recognized this distinction in regard to the charge of wilfulness, but failed to apply it in regard to the charge of negligence. When forfeiture of office is sought because of negligent violation of this statute, it is just as necessary to prove negligent conduct, as it is to prove wilful conduct when a wilful violation is charged.

We will therefore advert to the evidence in order to ascertain whether the conduct of the defendants was in fact negligent.

(1). According to the evidence T. M. Hicks, the Secretary of the Board, was a cautious, efficient and experienced official. The Board relied upon his calculations and reports. Defendant Nichols testified that the Board never made a contract when its Secretary stated that funds were not available. Hicks, testifying for the plaintiffs, made no claim that the Board ever entered into any contract when he had informed it that funds were not available, with the exception of the Tincher contract. In order to have funds available to pay Tincher, the Board transferred $2,500.00 from the Maintenance Building Fund to the New Building Fund. This was

done at the suggestion of the architect, who told the Board that like transfers were being made generally over the State. However, the Board did not make the transfer until it had laid the matter before the State Tax Commissioner and the State Superintendent of Schools and received their tentative permission. Hick's testimony disclosed that each year, after the Board had made its contracts, some unexpected circumstance reduced the amount legally at the disposal of the Board for that year. The funds for 1922-23 were materially reduced after the Shrake contract was executed, by reason of exonerations allowed to two large taxpayers. In each of the two subsequent years mistakes of the Assessor in the amount of taxable property within the district which he reported to the Board, caused it to anticipate a greater sum available in taxes than materialized. In one of the years the Board included in its calculation as available for use $2,500.00 which it expected to derive from the sale of some school property. It failed to realize on this property because the County Superintendent of Schools refused to approve the sale.

(2). At the time the Shrake contract was made, the Prosecuting Attorney of the county was ill. The Board consulted with a local attorney, W. L. Woodell, who stands high in his profession. Woodell prepared the contract with Shrake, and later, the one with the Hamilton Plumbing Company. Defendants testified that Woodell advised the Board that these contracts were legal. Woodell was examined as a witness for the plaintiffs. He was not asked as to what advice he gave the Board concerning the Shrake contract. He stated that he dictated the Hamilton contract, but did not remember expressing an opinion as to its legality. Admitting that Woodell was not consulted as to the legality of the Hamilton contract, the Board certainly had the right to believe the contract legal, from the mere fact that Woodell prepared it; it being a fair assumption that an attorney of his standing would not prepare for his client a contract which he considered illegal.

(3). Defendant Nichols testified that pending the completion of the new building, school was conducted in the old building, where sanitary conditions were very bad; that just and bitter complaint thereof was made by the patrons of the

school to the Board; and that on one occasion the Prosecuting Attorney of the County said to him: ''I was just starting to write you a letter, notifying you we was going to have you indicted for criminal neglect in not completing this building for use.'' The contracts with the Hamilton Company and the Virginia School Supply Company followed this threat. The Board had the right to infer that the Prosecuting Attorney would not so urge them to complete the new building if he had any reason to believe that the completion would involve the making of illegal contracts.

(4). Nichols testified that the taxpayers in general were consulted about the completion of the new building.

Counsel for plaintiffs stated in argument that the defendants were warned of the illegality of some of the contracts, by the County Superintendent of Schools and the Prosecuting Attorney. The evidence discloses that while the Prosecuting Attorney did advise the Board against the Tincher contract, his objection was due to the facts that the approval of the County Superintendent of Schools had not been obtained, that the public had no notice of the contract, and that the contract stated that it had been let to Tincher as the lowest bidder after due advertisement, when such was not the fact. It is also true that the County Superintendent of Schools objected to the Tincher contract, but his objection was based on the fact that the contract was let without giving the public opportunity to bid on it. He later approved the contract. He also protested countersigning drafts to the Virginia School Supply Company and the Hamilton Plumbing Company, but the reason he gave was that the Board had failed to secure his personal approval of these contracts. It therefore appears that the objections to the building contracts, urged by these two officials, were not based on insufficiency of funds.

Uncontradicted evidence therefore establishes that in making the contracts which now appear to be illegal, the members of the Board acted in accordance with the advice of parties ordinarily considered competent to advise. Can we say they were negligent in accepting the reports and calculations of their Secretary? Were they imprudent in executing con-

tracts prepared for the Board by Attorney Woodell? Were they reckless in transferring the $2,500.00 from one fund to another, upon the tentative permission of the State Tax Commissioner and the State Superintendent of Schools? Were they incautious in completing the new building when threatened with prosecution for its delay? Were they careless in not anticipating exonerations and mistakes which would reduce the available funds? Were they improvident in attempting to stretch insufficient funds to meet the pressing needs of their district? Unless these questions can be answered in the affirmative, the defendants must be acquitted of negligently contracting beyond the funds legally at their disposal. The extraordinarily prudent man probably would not have conducted the affairs of the district on so narrow a financial margin as was attempted by the defendants. But the defendants must be judged by the standard of the reasonably careful man, and not by the standard of extraordinary prudence. Mechem, Public Affairs, Sec. 301. To exact a higher degree of care would deter prudent men from accepting office. *U. S.* v. *Thomas,* 15 Wall. 337 (342-3). We can credit the ordinarily prudent man placed in circumstances similar to those of the present case, with no greater care or caution than the defendants herein exercised.

Certain technical objections to the petition were presented by defendants. We consider the petition sufficient at law, under *Painter* v. *Heironimous,* 97 W. Va. 579. In view of our holding on the merits of the case, we see no reason to prolong this opinion by comment on these objections.

For the reasons given the judgment of the lower court will be set aside and the petition dismissed.

*Judgment set aside; petition dismissed.*