324 S.E.2d 701

**Cecil POWERS, et al.**

v.

**James R. GOODWIN, et al., Dfts. Below,
Ed Cooke and James W. Armstrong,
Appellants, County Commissioners' As-
soc. of W.Va., W.Va. Assoc. of County
and Circuit Clerks, W.Va. Assessors As-
sociation, Interveners.**

No. 16291.

Supreme Court of Appeals of
West Virginia.

July 13, 1984.

Dissenting Opinion Sept. 25, 1984.

William L. Jacobs, Parkersburg, for appellees.

Peter A. Hendricks, Madison, for appellants.

John S. Sibray, Charleston, for County Com'rs' Ass'n of W.Va., W.Va. Ass'n of County and Circuit Clerks and W.Va. Assessors Ass'n.

MILLER, Justice:

This is a second appeal in connection with removal proceedings under W.Va. Code, 11-8-31, and W.Va.Code, 6-6-7, brought against Ed Cooke and James Armstrong, two Boone County Commissioners, who had voted to reimburse legal fees incurred by James Goodwin, the third Boone County Commissioner. In the first appeal, *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982), we established the law of the case and reversed the circuit court's holding that Commissioners Cooke and Armstrong were not subject to removal. In remanding this case, we made the following observation:

> "It would appear to this Court that on the facts presented to the court below in the joint motions for summary judgment that the reimbursement of Mr. Goodwin for his attorneys' fees was probably an unauthorized expenditure since the foundation of both the criminal prosecution and petition to remove him from office was personal malfeasance entirely unrelated to the discharge of his official duties." 170 W.Va. at 162, 291 S.E.2d at 477.

We then proceeded to establish some specific guidelines to assist the circuit court on the remand.[1] Upon remand, the circuit

---

1. The following guidelines were established: "However, on remand it must be determined whether the other commissioners acted: (1) in good faith and non-negligently; (2) in good faith but negligently; or (3) in bad faith and wilfully. If the commissioners acted in good

court[2] proceeded to hold additional hearings and concluded in a detailed opinion that the actions of Commissioners Cooke and Armstrong met the requirements of category two of the guidelines contained in *Powers v. Goodwin,* i.e., the actions were performed in good faith, but negligently. As a consequence of this finding, the court held that these two commissioners should be removed from office, but could not be held personally liable for the attorney's fees, which amounted to $14,547.64.

It is this removal order that is being appealed. A number of errors are assigned, which may be grouped into three main categories: that the evidence was insufficient to uphold removal; that reliance on the advice of counsel was a defense to removal; and that there were a number of procedural errors.

## I.

## SUFFICIENCY OF THE EVIDENCE

■ With regard to the removal of a public official under W.Va.Code, 11–8–31,[3] it does not appear that we have had occasion to specify the degree of proof necessary to warrant a removal from office. In this proceeding, removal was also sought under W.Va.Code, 6–6–7. This latter provision contains the procedural requirements for removal[4] and we have held in Syllabus Point 9 of *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975), that "[t]o warrant removal of an official pursuant to Code 1931, 6–6–7, clear and convincing evi-

dence must be adduced to meet the statutory requirement of satisfactory proof." *See also Kemp v. Boyd,* 166 W.Va. 471, 275 S.E.2d 297, 301 (1981); *In the Matter of Boso,* 160 W.Va. 38, 231 S.E.2d 715, 718 (1977). Because of the obvious similarity in the end result between the two removal statutes, we believe that the same evidentiary standard of proof should apply. Furthermore, it may often be the case, as it is here, that a proceeding will be brought under both removal statutes so that a uniform standard of proof would obviously be desirable. *See Edwards v. Hylbert,* 146 W.Va. 1, 118 S.E.2d 347 (1960). We, therefore, conclude that the standard of proof for removal proceedings under W.Va.Code, 11–8–31, is by clear and convincing evidence.

■ It should be noted that under both statutes, a court will hear the case in lieu of a jury. We have held under both statutes that a court's findings of fact are entitled to the same weight as a jury verdict or as more fully stated in Syllabus Point 6 of *Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33 (1957):

> "The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding."

*See also Edwards v. Hylbert, supra.*

■ In the present case, the main argument over the trial judge's findings of fact

---

faith and non-negligently, then they can neither be removed from office nor be required to repay the money. If, however, the commissioners acted in good faith, but negligently, they can be removed, but cannot be held personally liable for the misappropriated funds. Finally, if Commissioners Cooke and Armstrong acted both in bad faith and wilfully, they can be removed from office and can be held personally liable for repayment of the misappropriated funds." 170 W.Va. at 162, 291 S.E.2d at 477.

2. Special Judge Frank J. DePond of the Seventeenth Judicial Circuit was appointed after the case was remanded.

3. W.Va. Code, 11–8–31, provides in material part:

"The State, a taxpayer, or the tax commissioner may institute and prosecute to final

judgment any proceeding for the removal of a member of a local fiscal body who has wilfully or negligently violated any of the provisions of this article.

"Upon the petition of the State, a taxpayer, or the tax commissioner, the court, or in vacation the judge, shall set a time for hearing the petition. An attested copy of the petition and the charges contained therein shall be served upon the defendants at least twenty days prior to the date of hearing. No other pleading or notice of the proceedings shall be necessary."

4. W.Va. Code, 6–6–7, refers to W.Va. Code, 6–6–5, which generally states the grounds for removal: "for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality."

is that they are not supported by the evidence. Particular emphasis is placed on the fact that Commissioner Goodwin was not removed from office for his admitted use of the county's telephone credit card for his personal business.[5] However, this argument ignores the critical fact that the removal charge against Commissioner Goodwin did not involve a matter relating to his official duties as a commissioner. As we noted in our earlier opinion, the reimbursement of Commissioner Goodwin for his attorney's fees was probably an unauthorized expenditure since the earlier proceedings which gave rise to the fees were "entirely unrelated to the discharge of his official duties." *Powers v. Goodwin*, 170 W.Va. at 162, 291 S.E.2d at 477. The circuit court found, and this is clearly supported by the record, that Commissioners Cooke and Armstrong were aware of this fact.

Moreover, neither Commissioners Cooke nor Armstrong attempted to make any personal investigation of the fee bill nor to have some explanation from Commissioner Goodwin nor to require some itemization of the bill. It appeared that some of the fee charges were incurred well prior to the institution of the removal charges and were for matters unrelated to the removal proceeding.

In *Powers v. Goodwin*, we referred to the negligence standard from *Lane v. Blair*, 162 W.Va. 281, 250 S.E.2d 124 (1978), that placed the duty on public officials to exercise some diligence. *See also* Syllabus Point 2, *Edwards v. Hylbert, supra*. It is manifest that Commissioners Cooke and Armstrong failed to make any investigations on their own and that they simply turned the entire matter over to an assistant prosecutor with the general request that he tell them if payment was proper. They made no attempt to question or otherwise discuss the matter with him. Given this record, we uphold the trial court's finding of negligence.

5. The judge who presided at Commissioner Goodwin's removal hearing concluded that the amount which Commissioner Goodwin ac-

## II.

### RELIANCE ON ADVICE OF COUNSEL

Commissioners Cooke and Armstrong strenuously argue that any negligence on their part should be excused as a matter of law because they acted on the advice of an assistant prosecuting attorney. Both testified that once the fee bill was presented by Commissioner Goodwin, they made no independent investigation of it, but simply turned the matter over to the assistant prosecutor.

The circuit court found that at a commissioner's meeting on June 1, 1981, Commissioner Goodwin's bill for legal fees was taken up by Commissioners Cooke and Armstrong. Commissioner Goodwin was present at the meeting, but stepped down as commissioner to present his fee bill, which was not itemized.

Shortly prior to the presentation of the fee bill, the assistant prosecutor gave the other two commissioners a legal memorandum, which, without reciting any facts surrounding Commissioner Goodwin's removal proceeding, indicated that payment of the fee bill would be proper. Included in the memorandum was the statement that "the general rule of law [is] that a public body may indemnify a public official, who acts in good faith, for legal expenses incurred in suits brought against him for acts committed in the discharge of his duties."

The trial court found that neither Cooke nor Armstrong questioned the assistant prosecutor regarding his memorandum and that the fee bill showed legal fees totaling more than $10,000 that were incurred by Goodwin prior to the time that any removal proceedings had been brought. The court also found that Cooke and Armstrong made no inquiry as to what the fees were incurred for, even though they were aware that Goodwin had been involved in earlier charges not connected with the credit card removal proceeding. The court also found that at the time the bill was authorized to be paid, Cooke and Armstrong had per-

knowledged charging, i.e., $14.77, was too insignificant to warrant removal.

suaded Goodwin to agree that he would reimburse the county if it were subsequently determined that the payment was illegal. These findings are supported by the record.

We have not had occasion to discuss the question of what role the advice of counsel may have where a public official has been charged with neglect of duty. In *Edwards v. Hylbert*, 146 W.Va. 1, 118 S.E.2d 347 (1960), the issue was raised in a proceeding involving the removal of the mayor and certain city councilpersons, but was not discussed because the court found that they had not relied on advice of counsel.

Our earlier case of *Hamrick v. McCutcheon*, 101 W.Va. 485, 133 S.E. 127 (1926), involved an attempted removal of the members of a board of education. Mention was made in the opinion that the board had consulted an attorney, but no discussion of the relevant legal principles was undertaken.[6]

■ Reliance on advice of counsel as a defense is a subject that does not appear to have been extensively discussed by the courts.[7] It seems clear, though, that the party asserting this defense has the burden of showing that he: (1) made a complete disclosure of the facts to his attorney; (2) requested the attorney's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied upon the advice in good faith.[8] *SEC v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n.28 (D.C.Cir.1981); *see SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101–02 (2d Cir.1972); *United States v. Custer Channel Wing Corp.*, 376 F.2d 675, 683 (4th Cir.), *cert. denied*, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967); Hawes & Sherrard, *Reliance on Advice of Counsel as a Defense in Corporate and Securities Cases*, 62 Va.L.Rev. 1 (1976); Note, *Advice of Counsel as a Defense*, 28 Va.L.Rev. 26 (1941).

We have recognized much this same law in cases involving suits for malicious prosecution where acting on advice of counsel can be an absolute defense. In Syllabus Point 8 of *Truman v. Fidelity & Casualty Company of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961), we said:

"'A suit, action or proceeding, prosecuted in good faith, and on advice of reputable counsel obtained after a fair and accurate disclosure to counsel of the facts on which advice is sought, may not serve as the basis of an action for malicious prosecution.' *Hunter v. Beckley Newspapers Corp.*, 129 W.Va. 302, Pt. 5 Syl. [40 S.E.2d 332 (1946)]; *Wright v. Lantz*, 133 W.Va. 786, Pt. 2 Syl. [58 S.E.2d 123 (1950)]'".

*See also Hogan v. Robert H. Irwin Motors, Inc.*, 121 N.H. 737, 433 A.2d 1322 (1981);

---

**6.** In *Powers v. Goodwin*, we discussed utilizing an attorney general's opinion or a court test "when a county commission or other fiscal body is in doubt about whether it is appropriate to expend county funds to indemnify itself for legal fees incurred." 170 W.Va. at 160, 291 S.E.2d at 475.

**7.** One commentator has summarized the matter as follows:

"In considering the limited availability of advice of counsel as a defense it must of course be remembered that in many cases such advice, though not a defense, is a palliative. Perhaps mistaken advice is more often of value in this way than by way of defense. The rule would seem to be that in all cases of *mala prohibita*, where advice fails to exculpate because no intent is requisite, the judge or the jury may consider the advice in mitigation of the punishment or damages, and advice will always cut off damages of an exemplary or punitive kind where the increased liability is predicated upon intent." Note, *Advice of Counsel As a Defense*, 28 Va.L.Rev. 26, 29 (1941). (Footnotes omitted).

**8.** In this regard, some courts have held that the advice must not be so patently erroneous as to be unacceptable to a reasonably prudent person. 6A G. Bogert & G. Bogert, The Law of Trusts and Trustees § 541 at 164–65 (2d rev. ed. 1978); Comment, *Reliance on Advice of Counsel*, 70 Yale L.J. 978, 980 n.13 (1961); Note, *Advice of Counsel as a Defense*, 28 Va.L.Rev. 26 n.5 (1941); *see United States v. Homestake Min. Co.*, 117 F. 481, 488 (8th Cir.1902); *In Re Perel*, 51 F.2d 506, 507 (S.D.Tex.1931); *In Re Holbert*, 48 Cal. 627, 629 (1874); *People v. Vineberg*, 125 Cal.App.3d 127, 137–38, 177 Cal.Rptr. 819, 825 (1981), *cert. denied*, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468 (1982); *New Haven Trust Co. v. Doherty*, 75 Conn. 555, 563, 54 A. 209, 212 (1903); *Carty v. Toro*, 223 Ind. 1, 7, 57 N.E.2d 434, 436 (1944); *James v. West*, 67 Ohio St. 28, 49, 65 N.E. 156, 159–60 (1902); *Tuttle v. Gilmore*, 36 N.J.E.Q. 617, 624 (1883); *In Re Borden's Trust*, 358 Pa. 138, 143, 56 A.2d 108, 110–11 (1948); *In Re Whitecar's Estate*, 147 Pa. 368, 23 A. 575 (1892).

*Pallas v. Zaharopoulos,* 219 Va. 751, 250 S.E.2d 357 (1979); Restatement (Second) of Torts § 666 (1977).

However, acting under advice of counsel is not an absolute defense in other situations. In the contempt field, we have stated that it is not a defense, but may go to the mitigation issue. *State ex rel. Walker v. Giardina,* 170 W.Va. 483, 294 S.E.2d 900, 903 (1982); *Bailey v. Bailey,* 127 W.Va. 826, 829, 35 S.E.2d 81, 82–83 (1945).

■ Except for malicious prosecution suits, it is generally held that reliance on advice of counsel is not an absolute defense to charges that a person is acting unlawfully or negligently. This issue has been raised in suits involving violations of civil rights under 42 U.S.C.A. § 1983, which are treated as federal tort actions.[9] Typical of most courts' approach in this area is this statement from *Crowe v. Lucas,* 595 F.2d 985, 992 (5th Cir.1979): "Reliance on advice of counsel does not serve as an absolute defense to a civil rights action. Rather, it is among the calculus of facts that a jury is to consider on the issue of good faith." *See also Dellums v. Powell,* 566 F.2d 167, 185 (D.C.Cir.1974), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1977); *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 517 F.2d 1141, 1145–46 (4th Cir.1975).

■ From the foregoing law, we conclude that the circuit court acted properly in concluding that acting on advice of counsel is not a per se defense to charges that a public official has acted unlawfully.

### III.

### OTHER ERRORS

■ Complaint is made that the taxpayers on this removal case were not registered voters. However, voter registration certificates were introduced and these taxpayers testified that they were registered voters at depositions which were later made a part of the record. The fact that they did not have detailed information of the case and had not met frequently with their attorney does not create a fatal flaw in the proceedings. *Cf. Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *State ex rel. Bromelow v. Daniel,* 163 W.Va. 532, 258 S.E.2d 119 (1979).

■ Further complaint is made that the action was not timely prosecuted. Even assuming there were some legal requirement beyond Rule 41 of the West Virginia Rules of Civil Procedure, we find no basis in fact for this assertion. The challenged payment was made in June of 1981. The case had been heard on appeal in this Court prior to May 17, 1982, when our first opinion was issued. On remand, prompt steps were taken to further develop the case for hearing. Some delay did occur in securing a special judge, but this cannot be attributed solely to the original taxpayers-petitioners.

■ The claim is made that the circuit court erred in finding that a grand jury may be used to recommend impeachment of a public official. This was not a finding in the present case on which the circuit court based its removal decision. It appeared in a recitation of the factual history of the prior proceeding involving Commissioner Goodwin.[10]

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

9. The United States Supreme Court has utilized this characterization in *Smith v. Wade,* 461 U.S. 30, 34, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632, 637 (1983):

"Section 1983 is derived from § 1 of the Civil Rights Act of 1871, 17 Stat 13. It was intended to create 'a species of tort liability' in favor of persons deprived of federally secured rights. *Carey v Piphus,* 435 US 247, 253, [98 SCt 1042, 1047, 55 LEd2d 252, 258] (1978);

*Imbler v. Pachtman,* 424 US 409, 417, [96 SCt 984, 988–89, 47 LEd2d 128, 136] (1976)."

10. Petitioners argue that the trial court erred in rejecting their request for jury trial and in making certain evidentiary rulings. These assignments are not discussed in their brief and are, therefore, deemed waived. Syllabus Point 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981); *Quackenbush v. Quackenbush,* 159 W.Va. 351, 352, 222 S.E.2d 20, 21 (1976).

HARSHBARGER, Justice, dissenting:

The majority's opinion speaks to reliance upon a lawyer's advice as not being an "absolute defense", and concludes that the trial judge was correct that "acting on advice of counsel is not a *per se* defense to charges that a public official has acted unlawfully." I do not quarrel with that proposition.

However, I insist through this dissent that reliance upon advice of counsel should have a strong bearing upon whether one so doing can be clearly and convincingly guilty of negligence, warranting removal from office. And the bearing should be even more eroding of negligence when the lawyer is one designated by statute to advise the official.

I believe that these commissioners' reliance on their statutory counsel's advice [1] when they made the decision that led to their removal fatally clouds the "clear and convincing" evidence standard for establishing negligence sufficient to remove them from office.

Critically important facts in the overall circumstances bearing on negligence were not mentioned by the majority.

When the commissioners paid the attorneys' fees, our law governing legal fees for public officials had never been interpreted by this Court. The commissioners, both laymen, as are almost all county officials,[2] thus acted in a legal vacuum. They faced what was to them a novel and potentially dangerous (to them) legal problem and therefore sought and obtained advice from the prosecuting attorney's office. They were told by their lawyer that they could lawfully pay the bill. Because of their concern that payment might ultimately be found unlawful, and considering the widely known fact that the removal proceeding was crassly political and infected with bad

blood of the sort that leads to lawsuits, they stipulated in their order authorizing payment that if such payment should be found to be improper, it would have to be repaid. How can this conduct clearly and convincingly be negligence warranting removal?

The following colloquy during a commission meeting wherein a payment on the fee was approved, proves the reasonableness of the commissioners' conduct and their *lack* of negligence:

Mr. Francis M. Curnutte, III, Assistant Prosecuting Attorney for Boone County: "I was asked a question by the Commission concerning the propriety of reimbursement of a public official for *legal expenses incurred defending himself in suit or actions arising out of the scope of his capacity as a public official;* to wit, a member of this Commission. He had to defend himself from certain allegations and the action ended in his favor. *The grounds were shown to be without merit,* and I was asked if in such a circumstance that would reimbursement of—for that official for his legal expenses be proper. I researched the issue, and I found that the overwhelming body of the law says that, yes, in such a circumstance the official may be reimbursed. The general principle of law is settled, and most jurisdictions in this country there is very little law to the contrary. *In a circumstance where the official defends his actions and the suit ends in his favor, then he may be reimbursed for his legal expenses.* I have a memorandum to submit to the Commission on that effect, *and it is my opinion that in* such a circumstance *reimbursement of the official for his legal expenses would be a justified and proper expense.*"

President Cooke: "O.K. In essence, you're saying that the whole thing in a

---

1. The prosecuting attorney is required by law to represent county government. W.Va. Code, 7–4–1 provides in part:

   "It shall also be the duty of the prosecuting attorney to attend to civil suits in such county in which the State, or any department, commission or board thereof, is interested, and to advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceed-

ings in which such county or any county board of education is interested."
   *See also* Op. Att'y. Gen., June 27, 1969.

2. Amicus curiae brief of the County Commissioners Association of West Virginia, the West Virginia Association of County and Circuit Clerks, and the West Virginia Assessors Association at page 4.

nutshell here is that *he's defending himself not as an individual, but as a County Commissioner."*

Mr. Curnutte: *"Yeah.* The law says that—the principle of law that demands that an official be held to strict accountability for his actions also demands that he be able to defend himself from unfounded allegations; *and since in this case the allegations proved to be unfounded,* it is well settled that he may be reimbursed. The vast—the vast corporates of the law is uniform on this point. *I checked cases all the way from California to Maine and the law is pretty well clear."*

President Cooke: *"Well, you're the attorney, and I'm not;* but it would appear if we can pay good taxpayers' money to prosecute a fellow that's innocent, then we ought to be able to reimburse a fellow that's found not guilty."

Mr. Curnutte: "Yes."

President Cooke: "Is that a fair assumption?"

Mr. Curnutte: "Yes."

Commissioner James R. Goodwin: "My little understanding in the law is that it's supposed to be fair for both sides."

Mr. Curnutte: "Yes. The law states that public funds may *not be used* to shield a public official from illegal activities; *but they may be used* to defend him from groundless charges."

Commissioner Goodwin: "O.K."

President Cooke: "Any questions, Commissioner?"

Commissioner James W. Armstrong: "The main thing that brought this up was a question of payment to reimburse one of the present Commissioners. Do we have your recommendations on the bill—*is it a just and true bill?"*

Mr. Curnutte: *"Yes.* We do have. *It appears that the bill is in order.* I have checked this. This is a letter from the law office, and it is signed by Charles W. Covert, a member of the law firm in question. *I have verified this by telephone that this is an accurate accounting."*

Commissioner Armstrong: "And this is pertaining to Commissioner James R. Goodwin?"

Mr. Curnutte: "Yes, it is. All those are the bills incurred by James R. Goodwin *solely in defending actions arising out of his capacity as Boone County Commissioner."*

Commissioner Armstrong: "What's the total of said bill? Do you have it?"

Commissioner Goodwin: "You'll have to add $700.00 for this right here, Jim. Add them up there and see. I did in there, but I don't know ..."

Commissioner Armstrong: "Ten thousand five hundred, and forty seven sixty four, I think."

Commissioner Goodwin: "I believe so, but you can add it up. Thirteen eight four seven six four and seven hundred."

Commissioner Armstrong: "Jim, if we entertain such a motion on this *upon the advice of the Prosecuting Attorney's Office here,* and in the future something should arise, what's your feelings on that? As far as if we would get in jeopardy."

Commissioner Goodwin: "Was that question for me?"

Commissioner Armstrong: "Yes."

Commissioner Goodwin: "I thought you said Ed. In the event that somewhere down the road the advice from our legal counsel who is Frank Curnutte, *should prove to be false, I personally will return this money, you know.* I would be forced to, anyway. Be that simple. You know, I've been here long enough to know that I'm still going to be shot at. But the position I take is that if at any time down the road this would prove to be an illegal expenditure, I will see that these funds are returned. I certainly don't anticipate that, but there's always a remote possibility."

Commissioner Armstrong: "Frank, *you have no reservations about this whatsoever?"*

Mr. Curnutte: "It's my opinion *that it is a proper expense. I can't advise the Commission what to do,* other than my opinion that it is—it would be legal and

*proper for you to reimburse Mr. Goodwin if you so choose."*

Commissioner Armstrong: "My only statement is if I had to spend out-of-pocket money to defend myself for something I did here and won the case, I'd expect ..."

Commissioner Goodwin: "You'd want your money back, too; wouldn't you?"

Commissioner Armstrong: "I'd want my money back. I believe anybody in their right mind would want their money back—on the thing."

Mr. Curnutte: "And I think *public policy would demand that.*"

Commissioner Goodwin: "Well, you know, for the record, *I've kicked this around with a lot of people, and I have never run across anywon (sic) who does not agree with my position one hundred per cent, regardless of what side they may take.*"

Mr. Curnutte: *"These are attorneys you're speaking of?"*

Commissioner Goodwin: *"Yes."*

Commissioner Armstrong: "What's your opinion, Ed?"

President Cooke: "I've done made it. I *feel like that we're all targets of any person or persons who choose to jump on our back for any reason, good or otherwise;* and I feel like we have to have some protection. I sit in here with the Commissioners as long as I do not do anything wrong. *I don't think I should have to take money out of my own pocket to defend myself.* And I also—the statement I made prior that I think you can use the taxpayers' money to prosecute a person who does not turn out to be in a position to be removed from office, then you ought to be able to do the same thing particularly if he's innocent."

Commissioner Armstrong: "Based upon the recommendation of the Prosecutor's Office, I'm going to make a motion ...." (Emphasis supplied.)

Again, the question is not whether reliance on advice of counsel is an absolute defense in removal proceedings: it is what weight should be given to the fact that these people relied on their statutory legal counsel when they decided to pay the fee, in finding whether they acted *negligently.*

When a county official seeks and obtains advice from his statutory attorney and then follows that advice after mature consideration, such official should not be removed except in exceptional circumstances. There are no exceptional circumstances here.

The logical corollary is that failure to follow legal advice would be a significant factor proving negligence.

Even the majority seems to recognize that a reasonably prudent person is entitled to rely on his lawyer's advice, unless that advice is so patently erroneous as to be obvious to any reasonable person.

These commissioners have satisfied the four-part test in the majority's opinion: there was complete disclosure of facts to the prosecutor's office, they requested his advice as to the legality of paying the fee, they were advised that a payment was lawful, and they relied in good faith upon that advice.

Our opinion in *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466, 475 (1982), analyzing the conflicting interests involved in cases about removal of public officials and indemnification for their attorneys' fees, did not depart from established removal law that "there must be either intentional deviation from the requirements of the statute or such extreme negligence as to reflect a palpable neglect of duty to warrant removal." Here, we have not followed that good precedent.

I am authorized to state that Justice NEELY joins with me in this dissent.