# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2025 Term

_____

No. 24-ICA-486
No. 24-ICA-487

_____

FILED

**November 13, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

LILLIE JUNKINS, IN HER OFFICIAL CAPACITY AS VICE MAYOR, CITY OF
CLARKSBURG, WEST VIRGINIA,
Respondent Below, Petitioner,

v.

WEST VIRGINIA ETHICS COMMISSION,
Respondent,

And

JAMES E. MARINO, FORMER MAYOR, CITY OF CLARKSBURG, WEST
VIRGINIA,
Respondent Below, Petitioner,

v.

WEST VIRGINIA ETHICS COMMISSION,
Respondent.

_____

Appeal from the West Virginia Ethics Commission
Jeffrey G. Blaydes, Hearing Examiner
Complaints #VCRB 2022-2 and #VCRB 2022-04

AFFIRMED, in part, REVERSED, in part, and REMANDED

_____

Submitted: October 7, 2025
Filed: November 13, 2025

Edmund J. Rollo, Esq.
Rollo Law Offices
Morgantown, West Virginia
Counsel for Petitioners

John Everett Roush, Esq.
Interim General Counsel
Charleston, West Virginia
Counsel for Respondent

JUDGE WHITE delivered the Opinion of the Court.

WHITE, JUDGE:

Petitioners Lillie Junkins and James E. Marino (collectively "Petitioners") appeal separate final decisions issued on November 7, 2024, by the West Virginia Ethics Commission ("the Ethics Commission," or sometimes referred to as "Respondent"), which found both Petitioners in violation of West Virginia Code § 6B-2-5 of the West Virginia Governmental Ethics Act ("the Ethics Act"). Each Petitioner was found to have committed seven violations --- one count under West Virginia Code § 6B-2-5(b)(1), prohibiting the use of public office for private gain, and six counts under § 6B-2-5(j), prohibiting participation in a matter in which an official has a financial interest. On this Court's own order, and in the interest of judicial economy and consistency, Petitioners' appeals were consolidated for the purpose of consideration, argument and decision.

On appeal, Petitioners contend that the Ethics Commission erred in finding that Petitioners violated West Virginia Code §§ 6B-2-5(j) and 6B-2-5(b)(1) by acting unlawfully and unethically despite their good faith reliance on advice of counsel.

Based upon our review of the record and applicable law, we find that the Ethics Commission was not clearly wrong in its determination of Petitioners' violations of West Virginia Code § 6B-2-5(j) for six counts. Regarding its determination of Petitioners' violations of West Virginia Code § 6B-2-5(b)(1), we find that the Ethics Commission was

1

clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. Accordingly, we affirm the Ethics Commission's determination of the violations of West Virginia Code § 6B-2-5(j) for six counts but reverse the determination of the violation of West Virginia Code § 6B-2-5(b)(1) for each Petitioner. We remand the matter and instruct the Ethics Commission to adjust the fines and costs in accordance with this opinion. Further, Respondent's request for an award of costs relating to this appeal is refused.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner James Marino is a former mayor and City Council member of the City of Clarksburg and Petitioner Lillie Junkins is a former vice mayor and City Council member. Both Petitioners were public officials within the meaning of West Virginia Code § 6B-1-3(k) during all relevant times. The City of Clarksburg operates under a council-manager form of government consisting of seven elected City Council members who serve staggered four-year terms. From among its members, the council elects the mayor and vice mayor to serve two-year terms, and it employs a city manager who serves at the pleasure of the council. Council members receive annual compensation and are eligible for certain benefits.

On June 4, 2019, the City held a municipal election for three of the seven City Council seats. Petitioners Junkins and Marino were elected to four-year terms

2

beginning July 1, 2019, and ending June 30, 2023. The other four council members' terms were scheduled to expire on June 30, 2021.

In early 2020, the City Council sought to align its municipal election cycle with the state election schedule to increase voter turnout and reduce election costs. On January 2, 2020, the Council enacted an ordinance proposing to amend Section 37 of the City Charter to establish new municipal election dates. The proposed amendment conferred no financial benefit upon any member of the council. On February 20, 2020, the council voted six to one to place the proposed amendment on the June 1, 2021, municipal election ballot. All council members were permitted to vote. However, the change in election timing created an inconsistency between the existing term expiration dates and the proposed election schedule, which would have produced vacancies in 2023 and 2025.

In January 2021, the City Council again considered charter amendments to resolve the conflict and to provide for the direct election of the mayor by the voters. Acting on advice of the City Manager and City Attorney, the Council introduced an ordinance that would both authorize the direct election of the mayor and extend certain council terms to harmonize the City's election cycle. The proposed ordinance divided council members into two groups. Those first elected in 2019, including Petitioners, would have their terms extended by one year to June 30, 2024. Those to be elected in June 2021 would serve five-

3

year terms ending June 30, 2026. Thereafter, beginning July 1, 2026, the governing body would consist of six council members and a directly elected mayor.

The ordinance proceeded through two readings. On January 21, 2021, the first reading passed by a vote of four to three. Neither Petitioner recused themselves and both voted against the measure. On February 4, 2021, the second and final reading passed by a vote of four to two. Petitioner Marino was absent from the meeting.

The proposed amendment appeared on the ballot as Amendment 5, which summarized the establishment of a six-member council and a directly elected mayor and noted that the terms of certain sitting council members would be extended by one year. On June 1, 2021, the voters approved Amendment 5, resulting in the extension of Petitioners' terms until June 30, 2024.

After the election, questions were raised regarding the legality of several of the approved amendments, including those that extended existing council terms. The City Council determined that portions of the amended charter were defective and required correction. In early 2023, the council proposed Amendment 23-4 to realign the city's election schedule regarding the water board and to address inconsistencies affecting the

council members' terms.[1] Amendment 23-4 provided that the three council seats originally filled in 2019, including those of Petitioners, would appear on the June 6, 2023, ballot for one-year terms with regular four-year terms to resume in May 2024.

On February 2, 2023, the council passed the first reading of Amendment 23-4 by votes of five to two. Neither Petitioner recused, and both voted in opposition. On February 16, 2023, the council held a second and final reading, which again passed by votes of five to two. During that meeting, a citizen raised concerns that the previous term extensions were unconstitutional and cited an advisory opinion from the Secretary of State's office suggesting the same. Despite those objections, the council enacted the ordinances, and the voters subsequently approved the amendments. Petitioners both sought election to the new one-year council seats in June 2023, but neither were successful.

Following these events, the Ethics Commission received ethics complaints against both Petitioners. Each was charged with seven counts: six counts alleging violations of West Virginia Code §§ 6B-2-5(j)(1) and 6B-2-5(j)(3) which prohibit public officials from voting on matters in which they have a financial interest; and one count alleging

---

[1] Amendment 23-4 also contained a provision to adjust the terms of the City's elected Water Board members to facilitate the election date change from odd-numbered years to even-numbered years. The provision was included to resolve and clarify issues that bond counsel and outside counsel had expressed concern which involved a pending water project.

5

violation of West Virginia Code § 6B-2-5(b)(1) which prohibits public officials from knowingly and intentionally using his or her office or the prestige of his or her office for his or her own private gain.

In its November 7, 2024, final orders, the Ethics Commission found that Petitioners' participation in the ordinances constituted violations of the Ethics Act because of their participation in the 2021 and 2023 votes. The Ethics Commission found that Petitioners had a financial interest as they receive compensation and benefits for serving on City Council.

The Ethics Commission responded to Petitioners' argument that their reliance on counsel's advice was an absolute defense to the violations by finding that *Powers v. Goodwin* is controlling. 174 W. Va. 287, 324 S.E.2d 701 (1984). The Ethics Commission further found that there was no evidence that the four factors set forth in *Powers* were satisfied. The Ethics Commission noted that in relation to the violations occurring in 2021, Petitioners did not receive advice of counsel, but the Petitioners were aware of the potential violations of the Ethics Act in 2023. The Ethics Commission observed that counsel had discussed and advised Petitioners of whether their actions constituted private gain but did not advise regarding voting as it related to the Ethics Act. With this in mind, the Ethics Commission found, under *Powers*, that Petitioners' reliance

6

on counsel's advice is a mitigating factor for proposed sanctions. The Ethics Commission imposed public reprimands, modest fines and training requirements.

It is from this order that Petitioners now appeal.

## II. STANDARD OF REVIEW

West Virginia Code § 29A-5-4(g) states:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the Petitioner or Petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1)     In violation of constitutional or statutory provisions;
> (2)     In excess of the statutory authority or jurisdiction of the agency;
> (3)     Made upon unlawful procedures;
> (4)     Affected by other error of law;
> (5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"A reviewing court must evaluate the record of an administrative agency's proceeding to determine whether there is evidence on record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion

on the same set of facts." Syl. Pt. 1, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

"Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review." Syl. Pt. 1, *Appalachian Power Company, et al. v. State Tax Department of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

With these standards in mind, we now consider Petitioners' arguments.

## III. DISCUSSION

### A. Reliance On Advice of Counsel

On appeal, Petitioners assert that the findings of the Ethics Commission of violations under West Virginia Code §§ 6B-2-5(j)(1), 6B-2-5(j)(3) and 6B-2-5(b)(1) are erroneous because their actions were taken in good-faith reliance upon the advice of counsel when they voted on matters affecting their terms of office. Petitioners contend that they relied upon the advice of the City Attorney, who drafted and reviewed the ordinances and affirmatively advised Petitioners that their actions were lawful. They maintain that such reliance negates any intent and precludes liability under the Ethics Act.

The Supreme Court of Appeals of West Virginia ("SCAWV") has found that "[e]xcept for malicious prosecution suits, it is generally held that reliance on advice of counsel is not an absolute defense to charges that a person is acting unlawfully or negligently." Syl. Pt. 3, *Powers v. Goodwin*, 174 W. Va. 287, 324 S.E.2d 701 (1984). The Court further held that "the party asserting this defense has the burden of showing that he: (1) made a complete disclosure of the facts to his attorney; (2) requested the attorney's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied upon the advice in good faith. *Id*. at 291, 324 S.E.2d at 705.

Petitioners argue that the Ethics Commission's interpretation of the *Powers* criteria is too narrow. Petitioners maintain that while reliance on counsel's advice is not an absolute defense, it is a defense against the charges levied against them. Petitioners assert that they were advised directly and implicitly by the City Attorney when he provided guidance and direction to City Council.[2]

The Supreme Court of Appeals of West Virginia has recognized that "as a matter of practice the State and its political subdivisions provide counsel for most of the routine types of civil litigation…that are likely to be brought against state and county officials personally for activities arising from the discharge of their official duties." *Powers*

---

[2] City Council was also pressured to adopt the measure by its bond counsel and its outside counsel.

*v. Goodwin*, 170 W. Va. 151, 156, 291 S.E.2d 466, 471 (1982). The distinction between the institutional interests of a municipality and the personal interests of its officers is neither abstract nor academic. It is the heart of municipal practice.[3]

This Court is not persuaded by Petitioners' arguments. In the case at hand, the factors required under *Powers* have not been satisfied. The testimony presented does not indicate that either Petitioner had a full and frank conversation with the City Attorney regarding the issues or risks faced by Petitioners regarding their voting in 2021 or 2023. In fact, only Petitioner Marino had a direct conversation with the City Attorney on these matters in 2023. Further, the City Attorney mistakenly advised Petitioners when asked directly about the pending ethics complaint before the 2023 vote that their actions are legal because they did not experience a "gain" until the public voted. Further, the City Attorney reassured Petitioners that he would be defending them on the ethics complaint and encouraged them to pass the proposed ordinances.

---

[3] One of the more disquieting aspects of the instant case is the inadequate investigation and mismanagement of competing interests by the attorneys who undertook representation of the city and, in the process, advised and counseled Petitioners; a failure to appreciate the risks that Petitioners faced with pending ethics allegations compounded the situation. This failure is not merely technical; it betrayed the confidence and trust of Petitioners. Such conduct is incompatible with the baseline requirement of attorneys to be careful stewards of their clients' interests.

Counsel's actions reflect a troubling absence of professional awareness and accountability, which jeopardized not only Petitioners' individual defenses but also undermined the city's ability to protect its institutional interests.

Based on the foregoing law, we conclude that the Ethics Commission did not err in concluding that, in the instant case, acting on advice of counsel is not an absolute defense to the charges that Petitioners acted unlawfully.

## B. West Virginia Code Section 6B-2-5(j)

Subsection (j) of the Ethics Act provides that public officials may not vote on a matter in which they have a financial interest. *See* W. Va. Code § 6B-2-5(j) (2018). West Virginia Code §§ 6B-2-5(j)(1) and 6B-2-5(j)(3) require recusal by the public official from a vote in which he or she has a financial interest.

Petitioners argue that they voted to place the charter amendments on the ballot. Their votes did not involve any financial interests or private gains. However, the record supports the Ethics Commission's finding that Petitioners' participation in the ordinances had the effect of conferring a personal benefit, albeit incidental, through the extension of their terms of office and continued access to council compensation and benefits. Whether Petitioners had voted for or against the passage of the ordinance is of no moment. The Ethics Act was enacted to "maintain confidence in the integrity and impartiality of the governmental process in the state of West Virginia" by ensuring the "independence and impartiality of public officials and public employees[.]" W. Va. Code § 6B-1-2(a) and (b) (1989). Section 6B-2-5(j) provides specific guidance to meet that end

11

and does not distinguish whether the public official votes in favor or against. The statute is a complete prohibition on voting where a financial interest exists.

Because West Virginia Code § 6B-2-5(j) does not require proof of specific intent, substantial evidence supports the Ethics Commission's conclusions on the six counts charged. Therefore, the findings under subsection (j) are affirmed.

## C. West Virginia Code Section 6B-2-5(b)(1)

Subsection (b)(1) prohibits a public official from knowingly and intentionally using his or her office or the prestige of his or her office for his or her own private gain or that of another person.

The record does not support a finding that Petitioners acted intentionally to use his or her office or the prestige of his or her office for his or her own private gain. The evidence shows that they followed the advice of counsel, acted in open session, and that any financial benefit was both indirect and contingent upon voter approval. Moreover, both Petitioners voted *against* the 2021 ordinance. Unlike West Virginia Code § 6B-2-5(j), West Virginia Code Section 6B-2-5(b)(1) requires public officials to take an affirmative action to advance his or her own private gain. The record only establishes that the Petitioners voted against the 2021 measure. Voting against the 2021 ordinance is not an affirmative

12

action.  Since the record does not establish that the Petitioners knowingly and intentionally voted affirmatively to put the 2021 measure on the ballot, the Commission abused its discretion by finding a violation of West Virginia Code § 6B-2-5(b)(1).

Accordingly, the Ethics Commission's determination under West Virginia Code § 6B-2-5(b)(1) is reversed and remanded. The Ethics Commission shall revise its reprimand to limit the scope of the reprimand to the violations of West Virginia Code Section 6B-2-5(j). The costs assessed shall be revised downward to reflect the dismissal of the one count arising from subsection (b)(1). More specifically, the Ethics Commission shall reduce the amount of costs assessed to each Petitioner for investigating and prosecuting by the amount expended by the Ethics Commission to prosecute West Virginia Code Section 6B-2-5(b)(1).  Furthermore, the Ethics Commission is directed to reduce the $250 fine imposed on each Petitioner to reflect only violations of West Virginia Code Section 6B-2-5(j).

## D.  West Virginia Code Section 29A-5-4(d)

Respondent requests an award of the costs that were expended in preparing the record in this appeal in their briefing for the instant case. The request is pursuant to West Virginia Code § 29A-5-4, which addresses the judicial review of contested cases. In section (d), an agency has fifteen days from the receipt of a petition for appeal to transmit

the original or certified copy of the entire record of the proceeding to the court. Costs for such record involving administrative appeals are established under an allocation scheme whereby "the expense of preparing such record shall be taxed as part of the costs of the appeal." *Id.*

We read the cost of preparing the record as an ordinary cost of appeal, subject to the Court's discretion. The Court recognizes the agency's statutory entitlement to recover the actual expenses reasonably incurred in compiling, copying and certifying the record. However, the Court's discretion is not ministerial. The agency's expenditure in producing the record is a routine incident of its statutory duty. Thus, Respondent's request is refused.

## IV. CONCLUSION

Based on the foregoing, we find no error in the Ethics Commission's determinations that Petitioners violated West Virginia Code §§ 6B-2-5(j)(1) and (j)(3) for six counts but find that the record fails to support a violation of West Virginia Code § 6B-2-5(b)(1) for one count. Accordingly, we affirm the November 7, 2024, orders of the Ethics Commission for the violations of West Virginia Code §§ 6B-2-5(j)(1) and (j)(3) and reverse for the violation of West Virginia Code § 6B-2-5(b)(1) for each Petitioner. Further, we refuse Respondent's request to this Court for appeal-related costs. The matter is remanded with instruction to the Ethics Commission to enter an order in accordance with this opinion

and to adjust the fines and costs to reflect only the violations of West Virginia Code §§ 6B-2-5(j)(1) and (j)(3).

Affirmed, in part, Reversed, in part, and Remanded with instructions.