# CHARLESTON.

BALL *et al. v.* TOLER *et al.*

(No. 6658)

Submitted April 8, 1930. Decided April 15, 1930.
(Rehearing Denied May 29, 1930.)

*Dillon, Mahan & Holt* and *D. D. Moran,* for plaintiffs in error.

*Bailey & Shannon,* for defendants in error.

HATCHER, JUDGE:

Chapter 28A, § 12, of the West Virginia Code of 1923 provides that it shall be unlawful for a county court to issue any certificate, order, or other evidence of indebtedness which cannot be paid out of the levy for the current fiscal year, and that in case of negligent or willful violation of such provision, a court of competent jurisdiction shall enter an order forfeiting the offices of the members thereof. This is a proceeding brought under that chapter to remove J. Albert Toler and Bert Cook as members of the county court of Wyoming county. The circuit court found that the charges against the defendants were not sustained by the evidence and dismissed the petition.

It is not denied that certain county funds for the fiscal year of 1927-28 were largely overdrawn during the winter and spring of 1928. Evidence was introduced by petitioners showing that the defendants knowingly had the overdrafts issued. This was denied by defendants who maintained that they did not know the funds were exhausted when issuing the overdrafts. The finding of the circuit court forecloses the issue as to willful violation of the statute in their favor, since we cannot say the finding is plainly wrong. Because, also, of that determination, we will consider the issue as to negligent violation upon their own admissions.

The sheriff of Wyoming county, commencing January 1, 1928, endorsed all county orders "No Funds." Mr. Toler admits prompt information of this fact. A letter dated February 7, 1928, from F. E. Shannon, who was then prosecuting attorney, to D. D. Moran, stated: "Two of our county funds are overdrawn, which is nothing unusual." This letter was published in a county newspaper on March 22, 1928. Both de-

fendants, say they saw the letter. Yet, on April 3, 1928, they caused drafts amounting to $25,000 to be issued against the general county fund for the purchase of a lot. The price paid for the lot was about one-third of the entire amount of the general county fund for that fiscal year. There had been no provision made for the purchase in laying the levy. The defendants knew this. They also knew, according to Mr. Toler, that "nearly always, * * * no great amount of money" remained in the funds that late in the fiscal year. Mr. Toler further testified: "A. At the time this lot was purchased, there was some discussion as to whether we had funds or not, and it was concluded we did have the funds—we were so informed there. Q. Who informed you? A. I think the Clerk informed us. I am not sure, but any way the information came directly or indirectly from the Clerk. I don't know now. There were several people around that discussed it." When Mr. Cook was asked as to what effort he made to ascertain the condition of the funds at the time of the purchase, he testified: "A. Well, I don't know that I made any particular effort, but I had information that there were funds. Q. From whom did you have that information? A. I think I had that information from the Clerk." (The uncertain evidence of the defendants as to receiving this assurance from the clerk is not substantiated by his testimony.)

The obligation of a public official to "faithfully perform the duties" of his office is not satisfied with a perfunctory performance. *Nail v. Browning*, 73 Fla. 316, 74 So. 315. He must not rely on indirect information when direct information is at hand. He will not be permitted to close his eyes to the condition of funds entrusted to him. He cannot avoid statutory restrictions on the ground of ignorance which results from his own inattention. It is his plain duty to be informed. That duty is a primary one. It requires the exercise of the diligence of an ordinarily prudent man. *Hamrick v. McCutcheon et al.*, 101 W. Va. 485, 133 S. E. 127. The defendants here testify only to casual information as to the condition of the county funds. "I think the Clerk informed us. I am not sure," says Toler. "Well, I don't know that I made any particular effort (to ascertain the condition of the fund) * * * I think I

had the information (that there were funds) from the Clerk," says Cook. Even if the desirability and good faith of the purchase, which are denied, be admitted, the defendants were patently negligent in making, at that time of the fiscal year, an expenditure of such comparative magnitude, not contemplated in the levy without definitely ascertaining whether the balance in the fund warranted the expenditure. A fortiori was their conduct negligent in this respect after learning that the sheriff and prosecuting attorney regarded the county funds as overdrawn. The defendants seek justification under the decision in *Hamrick* v. *McCutcheon et al., supra*. In that case the members of a board of education, because of a great public necessity and threat of criminal prosecution, contracted beyond funds legally at their disposal. However, before doing so, they diligently sought information and advice from their secretary, from a reputable attorney, and from the state tax commissioner. They exercised the care of reasonably prudent men. Their wrongful act was occasioned by unsound advice and unsound business judgment, not by negligence. Therefore, that case is not comparable to this.

The negligence of the defendants here is established by their own testimony. The finding of the circuit court to the contrary is therefore plainly wrong.

Other violations are charged against defendants, but as negligence is so thoroughly established as to the one upon which we have commented, a discussion of the other charges is unnecessary.

The judgment of the circuit court is accordingly reversed and an order entered here sustaining the prayer of the petition.

*Reversed: order entered here.*