AUBRY LANE, *et al.*

*v.*

JOE D. BLAIR, *et al., etc.*

*Board of Education of Logan County*

(No. 14225)

Decided November 28, 1978.

*Boettner, Campbell & Crane, John Boettner, Jr., Michael R. Crane* for appellants.

*Zane Grey Staker, Paul E. Pinson* for appellees.

NEELY, JUSTICE:

This appeal arises from the dismissal of appellants' action to remove the members of the Logan County Board of Education from office pursuant to *W.Va. Code*, 11-8-31 [1933][1] for violation of *W.Va. Code*, 11-8-26 [1963].[2] The Circuit Court of Logan County found that the members did not willfully or negligently violate *W.Va. Code*, 11-8-26 [1963]. We disagree and reverse.

The Logan County Board of Education made application to the West Virginia Department of Education for $850,000 in state funds for construction of a vocational education facility in Logan County. The application was approved in March 1973 and in May 1973, $630,000 of the requested funds were remitted to the Logan County Board of Education with specific instructions that "[y]ou will be required to invest these funds and to keep a separate accounting of the interest ... [which] must be

---

[1] *W.Va. Code*, 11-8-31 [1933] provides in pertinent part:
. . . . .
"The State, a taxpayer, or the tax commissioner may institute and prosecute to final judgment any proceeding for the removal of a member of a local fiscal body who has willfully or negligently violated any provisions of this article."
. . . . .
[2] *W.Va. Code*, 11-8-26 [1963] provides:
Except as provided in sections fourteen-b, twenty-five-a and twenty-six-a [§§ 11-8-14b, 11-8-25a and 11-8-26a] of this article, a local fiscal body shall not expend money or incur obligations;
(1) In an unauthorized manner;
(2) For an unauthorized purpose;
(3) In excess of the amount allocated to the fund in the levy order;
(4) In excess of the funds available for current expenses.
Notwithstanding the foregoing and any other provision of law to the contrary, a local fiscal body or its duly authorized officials shall not be penalized for a casual deficit which does not exceed its approved levy estimate by more than three per cent, provided such casual deficit be satisfied in the levy estimate for the succeeding fiscal year.

applied to the project." Upon receipt, the money was placed in certificates of deposit in the Logan Bank and Trust Company but was not properly coded to preserve its integrity. According to proper Board of Education procedure the funds should have been coded 1355-3 (vocational construction funds); however, they were coded 00300 (vocational act funds) which indicated they bore no restrictions on their use.

The Logan County Board of Education had a budget based upon money properly available which the evidence conclusively demonstrates that the Board disregarded in its actual expenditures. An audit by the West Virginia Tax Commissioner completed in April 1975 revealed that the Board failed to publish required financial statements from 1969 to 1974, kept vague minutes, used no efficient encumbrancing system, practiced unauthorized investment procedures and suffered severe budget deficits in 1973-1974 ($790,929.62 deficit) and 1974-1975 ($682,651.04 deficit). It appears from the evidence that whenever money was needed to pay current expenses the Sheriff of Logan County informed the Logan County Superintendent of Schools that the checking account was low at which time the superintendent authorized cashing or partial cashing of certificates of deposit for placement in the general expenses drawing account. In this manner part of the $630,000 received for construction of the vocational school was spent for other school purposes. There is no question that the Board members were unaware that segregated categorical aid money was being spent; however, there is overwhelming evidence that the Board members were aware that they were over-spending their yearly budgets. Apparently no one inquired where the superintendent found the excess money to spend.

The Circuit Court of Logan County found that this misuse of funds did not amount to willful or negligent violation of *W.Va. Code*, 11-8-26 [1963] by the members of the Logan County Board of Education and, therefore, their removal from office was not required by *W.Va. Code*, 11-8-31 [1933]. We agree with the lower court that

no evidence was presented indicating any willful violation; however, that is not a defense to the charge of negligent violation of *W.Va. Code*, 11-8-26(2) [1963] which provides that no local fiscal body shall expend money "[f]or an unauthorized purpose." It is clear that part of the vocational construction money was spent for an unauthorized purpose since its only authorized purpose was for construction of a vocational education facility. We hold that under the circumstances of this case the trial court was clearly wrong in not determining that while the Board members did not have actual knowledge of the invasion of what should have been segregated vocational school construction money, they were negligent in failing to investigate the consistent availability of unforeseen funds. As the Board members had reasonable grounds to believe that serious budget problems existed and that the school system was routinely overspending, the trial court should have found that their failure to investigate was clearly actionable negligence.

The board members were provided monthly financial statements by their financial officer in which each line item of the board budget was evaluated by comparing the amount budgeted for that item with the total expenditures to date for the year for that line item, clearly showing at the end of each line the balance unobligated or the amount remaining to be spent for that line item. At the end of each line item was a "projection for year" showing the amount (deficit, surplus, or neither) which would remain in that line item if current spending patterns were continued.[3]* These financial statements consistently indicated that budget deficits with serious attendant financial problems were imminent. The financial statement for August 1973 showed a combined

---

[3] For example, part of the financial statement for June 1974 was as follows:

| LINE ITEM | DESCRIPTION | BUDGET | PRIOR | CURRENT | TOTAL | BALANCE | PROTECTION FOR YEAR |
|---|---|---|---|---|---|---|---|
| 201B | Sites & Sites Add'ns. | 62,000.00 | 61,560.00 | .00 | 61,560.00 | 440.00 | 440.00 |
| 210C | Improvement to Site | .00 | 31,084.88 | 2,983.00 | 34,067.88 | (34,067.88) | (34,067.88) |
| 220B | New Buildings | .00 | 1,714.08 | .00 | 1,714.08 | (2,843.58) | (2,843.58) |

projected budget deficit of about $840,000; the financial statement for January 1974 showed a combined projected budget deficit of about $724,000; the financial statement for June 1974 showed a combined projected budget deficit of about $606,000; the financial statement for January 1975 showed a combined projected budget deficit of about $809,000; the financial statement for June 1975 showed a combined projected budget deficit of about $592,000; and, the remaining statements consistently showed similar dismal information. However, since the superintendent told the Board that money was available to spend, the Board members were apparently cavalier about exceeding their normal budget.

We find it an incorrect ruling of law for the lower court to have held that a reasonable man could be informed that the budget was being seriously over-spent, that a large amount of money was available to subsidize that over-expenditure, and yet at the same time not feel the responsibility to investigate the origin of the available money. The members of the Board of Education occupy a fiduciary position and are under a duty to make detailed inquiry into any matter which appears to be wrong. Failure to do so is negligence and if such negligence causes or compounds violation of *W.Va. Code*, 11-8-26 [1963] the members can be removed from office.

For the reasons stated above, the judgment of the Circuit Court of Logan County is reversed.

*Reversed.*

MILLER, JUSTICE, *concurring:*

While I concur in the result, it is my opinion that the Court has a duty to draw upon its precedents when it undertakes the grave responsibility of removing public officials from office.

The general duty of members of a local fiscal body, in this case the members of the Logan County Board of Education, is measured by the rule announced in Syllabus Point 2 of *Edwards v. Hylbert,* 146 W.Va. 1, 118 S.E.2d 347 (1960):

"It is the duty of members of a local fiscal body to exercise ordinary diligence to keep informed of the condition of funds subject to their disposal. The obligation thus imposed is not satisfied by a perfunctory performance. They must not rely on indirect information when direct information is at hand. They can not avoid the effect of statutory restrictions on the ground of ignorance which results from their own inattention. It is their duty to be informed, and this requires the exercise of the diligence of an ordinarily prudent person."

Much the same rule can be found in *Ball v. Toler*, 109 W. Va. 61, 153 S.E. 238 (1930).

Specifically, *W.Va. Code*, 11-8-26, contains certain express financial standards to which local fiscal bodies must adhere, and if they negligently or wilfully fail to do so, expulsion from office can result under *W.Va. Code*, 11-8-31.

In the present case, two principal violations of *W.Va. Code*, 11-8-26,[1] were asserted. First, that the Board had spent for current expenses a substantial portion of State funds which were allocated solely for the construction of a vocational education facility, and that this was an expenditure for an unauthorized purpose. Second, that the Board had exceeded the three percent casual deficit provision.

---

[1] *W.Va. Code*, 11-8-26:

"Except as provided in sections fourteen-b, twenty-five-a and twenty-six-a [§§ 11-8-14b, 11-8-25a and 11-8-26a] of this article, a local fiscal body shall not expend money or incur obligations:

"(1) In an unauthorized manner;

"(2) For an unauthorized purpose;

"(3) In excess of the amount allocated to the fund in the levy order;

"(4) In excess of the funds available for current expenses.

"Notwithstanding the foregoing and any other provisions of law to the contrary, a local body or its duly authorized officials shall not be penalized for a casual deficit which does not exceed its approved levy estimate by more than three per cent, provided such casual deficit be satisfied in the levy estimate for the succeeding fiscal year."

The Board's defense was that the vocational education facility grant had been placed in certificates of deposit at a local bank, but was miscoded by the Board accounting system as a part of the Board's current expense budget. As a result of this coding error, the funds were carried and spent for current school expenses in the 1973-1974 and 1974-1975 fiscal years. No explanation was ever advanced by the Board members as to why the specific certificates of deposit representing the vocational education building funds lost their identity.

Furthermore, the Board claimed that by including the vocational education building funds in the general budget, there was no annual deficit in excess of the three percent. The lower court essentially agreed with the Board's position, although it did not condone the expenditure of the $630,000 of vocational education building funds for general school expenses, and concluded that it could not attribute this error to negligence on the part of the Board of Education.

The majority opinion adequately analyzes the generally chaotic condition of the Board's financial and other recordkeeping practices. There is no doubt that the Board was aware of the receipt of the $630,000 for the vocational education building fund and its initial segregation into certificates of deposit. It was likewise aware, through the monthly financial reports, of the substantial projected deficits in the school budget. The duty to inquire was manifest and the Board could not shield itself by the failure to inquire. Both *Edwards* and *Ball* make this plain, and characterize the failure to inquire as negligence sufficient to support removal under *W.Va. Code*, 11-8-31.

Certainly, *Evans v. Hutchinson,* ___ W.Va. ___, 214 S.E.2d 453 (1975), cannot support the Board's position. There, it was held that in determining the three percent casual deficit allowance under *W.Va. Code*, 11-8-26, it was proper to take into account revenues derived from

other than levy source.[2] Here, an attempt was made to avoid the three percent casual deficit by including in the general expense budget the $630,000 vocational education building fund, which had never been authorized for general expenses.

It would indeed be a curious situation if a local fiscal body could take monies that were specifically earmarked for building purposes, spend the funds in an unauthorized manner for current expenses, and thereby avoid the three percent casual deficit rule. To permit such activity would emasculate the safeguards imposed by *W.Va. Code*, 11-8-26, and lead to fiscal chaos.

I am authorized to state that Justice McGraw joins with me in this concurring opinion.

---

[2] *Evans* is the first case to interpret the three percent casual deficit rule enacted into *W.Va. Code*, 11-8-26, by Chapter 176 of the 1963 Acts of the Legislature. To the extent that *Evans* suggests that the three percent margin can be calculated by using the total School Board budget, I believe it is clearly erroneous. This is the basis on which Justice Sprouse dissented in *Evans*. His analysis seems irrefutable that the term "approved levy estimate" cannot be construed to mean total budget revenues from all sources, since the term "levy estimate" is tied by definition to "justification of the amount levied upon taxable property within the county for the support of the local schools." *W.Va. Code*, 18-9B-2. To expand the term "levy estimate" to include all of the revenue received by a school board for educational purposes would convert the three percent margin to a blank check for fiscal irresponsibility. This result was obviously not intended by the Legislature when it lifted the bar against any deficit by the three percent casual deficit rule. *W.Va. Code*, 11-8-26.