Elaine **RATHMANN,** Appellant,

v.

**BOARD OF DIRECTORS OF the DAVENPORT COMMUNITY SCHOOL DISTRICT,** The Davenport Community School District, Bradford Allison, Denise Stanger, Denise Hollonbeck, David Elliott, Steven Imming and Gary Kleinschmidt, Appellees.

No. 96–1571.

Supreme Court of Iowa.

July 1, 1998.

Jeffrey S. Bittner of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Carole J. Anderson of Lane & Waterman, Davenport, for appellees.

Edgar H. Bittle, James C. Hanks, and Elizabeth A. Grob of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for amicus curiae Iowa Association of School Boards.

Thomas W. Foley of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, Des Moines, for amicus curiae School Administrators of Iowa.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, ANDREASEN and TERNUS, JJ.

McGIVERIN, Chief Justice.

In this case we must decide whether a school district can charge a fee for retrieving public records requested under Iowa's open records law, Iowa Code chapter 22 (1995). We must also consider the method a school superintendent must follow in consulting private legal counsel for school district matters and whether private counsel hired by a school district is limited to representing the district in litigation matters, or whether private counsel may also advise a school district concerning general district matters.

The district court concluded: (1) that a school district may charge members of the public, as well as school board members, a fee to cover costs of retrieving public records requested under Iowa's open records law; (2) a superintendent under an adopted board policy may consult private legal counsel on particular issues without approval from the entire board; and (3) a school board may consult private counsel for advice on general school district matters, and is not limited to using private counsel only for litigation. The district court therefore dismissed plaintiff's petition challenging the validity of certain school board policies regarding the school district's right to charge a retrieval fee and concerning the authority of the superintendent and the board to consult with private legal counsel. We affirm in part and reverse in part.

## I. Background facts and proceedings.

### A. The *Gabrilson* case.

This case is another in an ongoing dispute involving the right of Davenport Community School Board members to view records of the Davenport Community School District (school district). We addressed a related issue in *Gabrilson v. Flynn*, 554 N.W.2d 267 (Iowa 1996). In that case, Carolyn Gabrilson, while a member of the Davenport Community School Board (Board), filed a petition for a writ of mandamus and for injunctive relief, seeking to compel then superintendent, Peter Flynn, to provide her with certain school district records.[1] Specifically, Gabrilson requested copies of a new series of

---

1. Superintendent Peter Flynn left his position in July 1994, and was replaced by defendant Bradford Allison, who started in his position on November 1, 1994.

Rathmann became a school board member in September 1992, and served until September 18, 1995. We filed our decision in *Gabrilson*, 554 N.W.2d 267, on September 16, 1996. Rathmann filed her petition in this case on May 4, 1995.

performance assessments that the school district was considering to administer to students in the district. Gabrilson argued that the records were "public records" under Iowa's open records law and thus were subject to public disclosure.

The district court held that the requested documents qualified as confidential documents under Iowa Code section 22.7(19) and thus were excluded from examination by Gabrilson. The court further enjoined Gabrilson from copying or disseminating the documents.

On appeal to us, we held that Gabrilson, as a school board member, had a right to inspect the assessment and accompanying documents, but that the district court had authority to enjoin her from copying or disseminating the documents because they qualified as confidential documents under Iowa Code section 22.7(19). *Id.* at 275. We further held that school board policy no. 101.9, which gave the superintendent the authority to determine whether to allow records requests from other board members, was unreasonable and unenforceable because it restricted the right of school board members to see school district records.[2] *Id.* at 276.

### B. The present dispute.

Like the dispute that led to our decision in *Gabrilson,* the present dispute arose when plaintiff Elaine Rathmann, while a school board member, requested documents relating to the school district's "Administrative Structure Review Team," a group organized to devise a plan for restructuring the administration of the school district. Superintendent Allison informed Rathmann that she would be charged approximately $138.53 to cover the costs of locating and retrieving the requested records, pursuant to board policy no. 306.5. Policy no. 306.5 allows the school

district to charge a fee to cover the costs of retrieving public records of the school district. Rathmann, however, refused to pay the fee.

Rathmann then sent a letter to superintendent Allison on April 21, 1995, challenging the school district's authority to charge a retrieval fee under policy no. 306.5 and the superintendent's authority under policy no. 902.5 to consult private legal counsel for school district matters without first obtaining approval from the full board. Rathmann requested that the Board repeal the policies.[3] In a letter dated April 27, superintendent Allison rejected Rathmann's request to repeal or withdraw the policies, noting that the policies had been adopted by the Board through majority vote.

On May 4, 1995, Rathmann filed a combined three-count petition for writ of mandamus and for injunctive relief in district court, naming as defendants the Davenport Community School District, superintendent Allison, the Board, and individual school board members (hereinafter collectively referred to as the Board), asserting that the Board had violated Iowa Code chapter 22 by denying her public records request. Rathmann challenged the Board's actions in her capacity as a "government body," a school board member, and as a private citizen. In her petition, Rathmann claimed that policy 306.5 regarding the school district's authority to charge retrieval fees and policy 902.5 concerning the superintendent's authority to consult private legal counsel without board approval violated Iowa law.

In separate rulings on motions for summary judgment, the district court concluded that policy 306.5 and policy 902.5 were valid under Iowa law, as applied to Rathmann in her capacity as a member of the public and

---

2. Policy No. 101.9 stated:

 All requests for information regarding ... the Eleventh Grade Assessments or other similarly developed programs will be made through the Office of the Superintendent.... Under these procedures requests which come from a board member will be reviewed by the Superintendent and the Board President [who] will deter-

 mine if the materials requested should be made available to the board member.
 *Gabrilson,* 554 N.W.2d at 275.

3. Rathmann also challenged the validity of board policy 101.9, which is the same policy we held invalid in *Gabrilson.* The Board later repealed policy 101.9. Rathmann has since abandoned any claim regarding the validity of policy 101.9.

as a school board member.[4] The court found that Iowa Code section 22.3 was "broad enough to cover retrieval expenses, supervisory expenses and copy fees," and thus concluded that policy 306.5 and its retrieval fee provision complied with Iowa's open records law, but noted that the fee had to be reasonable and could not exceed the cost of providing the service. The court also concluded that the superintendent thus had authority to consult private legal counsel without board approval and that private counsel could represent as well as give advice to the school board.

Rathmann filed a voluntary dismissal on August 15, 1996, of "all claims not previously disposed of as a matter of law." Rathmann's filing of her voluntary dismissal terminated the district court proceedings under the concept of "pragmatic finality" and provided the necessary finality to permit an appeal of all adverse prior district court rulings. *See Ahls v. Sherwood/Division of Harsco Corp.,* 473 N.W.2d 619, 623 (Iowa 1991) (stating general rule that voluntary dismissal of claims does not constitute final judgment for purposes of appeal, but holding that the case was "uniquely suited to a finding of pragmatic finality," and thus time for filing notice of appeal began to run from date of filing of such dismissal).

The Iowa Association of School Boards and School Administrators of Iowa have filed amici curiae briefs supporting the Board's position regarding board policy no. 902.5.

Although Rathmann raised a number of issues in the district court, she now agrees that there are only two issues we need consider in this appeal. First, whether the school district can charge members of the public, as well as school board members, a fee to cover the costs of retrieving public records requested under Iowa's open records law. Second, whether it is lawful for the superintendent alone to decide when to consult legal counsel concerning general school district matters and whether private counsel

may provide both legal advice and legal representation to the school district.

## II. Standard of review.

Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Gabrilson,* 554 N.W.2d at 270. Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). The record here consists of the pleadings, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Smith v. CRST Int'l, Inc.,* 553 N.W.2d 890, 893 (Iowa 1996). Under the present state of the record, neither party contends that any fact issues remain. The parties only ask that we rule on the questions of law raised in this appeal.

Our review of the district court's interpretation of section 22.3 is at law. *US West Communications, Inc. v. Office of Consumer Advocate,* 498 N.W.2d 711, 713 (Iowa 1993) (review of district court's interpretation of a statute is at law); *see also DeLaMater v. Marion Civil Serv. Comm'n,* 554 N.W.2d 875, 878 (Iowa 1996). Our review of the district court's application of section 22.3 is de novo. *Northeast Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health,* 513 N.W.2d 757, 759 (Iowa 1994) (review of actions brought under the freedom of information statute is de novo).

## III. Board Policy No. 306.5.

### A. Does Iowa Code section 22.3 allow a retrieval fee?

■ On appeal, Rathmann asserts that the district court erred in concluding that Iowa's

---

4. On August 25, 1995, the district court (Judge Max Werling) issued a combined ruling on Rathmann's motion for summary judgment and the Board's motion to dismiss/motion to strike. On

February 23, 1996, the district court (Judge James E. Kelley) entered a ruling on the Board's motion for summary judgment.

open records law allows a school district to charge a member of the public a fee to cover the costs of *retrieving* school district records that qualify as public records under Iowa Code chapter 22. Rathmann contends that Iowa Code section 22.3 does not allow a government body to charge a "retrieval fee" for gathering such records and that policy 306.5 is thus invalid. Additionally, Rathmann asks us to clarify our holding in *Gabrilson* to hold in this case that a school district cannot charge a school board member a fee to cover the costs of retrieving school district records which the board member has a right to see.

 Iowa Code chapter 22 is Iowa's freedom of information statute. *Northeast Council*, 513 N.W.2d at 759. This statute gives members of the public the right to examine and copy public records. Iowa Code § 22.2(1). The definition of public records includes records retained by a school district. *See id.* at § 22.1(3). The purpose of the statute is "to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981). There is a presumption of disclosure of records under the statute and exceptions to this rule are to be narrowly construed. *Northeast Council*, 513 N.W.2d at 759. The right of persons to view public records is to be interpreted liberally to provide broad public access to public records. *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 299 (Iowa 1979).

With respect to examination of public records, Iowa Code section 22.3 states:

The lawful custodian shall provide a suitable place for such work, but if it is impracticable to do such work in the office of the lawful custodian, the person desiring to examine or copy shall pay any necessary expenses of providing a place for such work. *All expenses of such work shall be paid by the person desiring to examine or copy.* The lawful custodian may charge a reasonable fee for the services of the lawful custodian or the custodian's authorized deputy in supervising the records during

such work. If copy equipment is available at the office of the lawful custodian of any public records, the lawful custodian shall provide any person a reasonable number of copies of any public record in the custody of the office upon the payment of a fee. The fee for the copying service as determined by the lawful custodian shall not exceed the cost of providing the service.

(Emphasis added.)

Board policy 306.5 provides as follows:

The district welcomes public interest in the schools and their operation. To that end, all public records of the school district as defined by Iowa Code Chapter 22 may be examined by the public during the regular business hours of the administration offices of the school district....

Persons wishing to examine the school district's public records shall contact the superintendent or his designee and make arrangements for the examination. The superintendent will make arrangements for the examination of public records as soon as practicable.

Persons wanting copies will be assessed an actual fee for the copy. *Persons wanting retrieval of data will be assessed an actual fee for the time of the specific employee or employees to retrieve the requested data, if the retrieval process exceeds 30 minutes of staff time.* People desiring to examine records shall pay any necessary expenses for providing a place for examining or copying records. Persons examining public records may be charged an actual fee for the custodian's supervision of the examination.

(Emphasis added.)

In its August 25, 1995, ruling concerning Rathmann's summary judgment motion, the district court concluded that Iowa Code section 22.3 allows a school district to charge members of the public, as well as school board members, a fee to cover the cost of retrieving public records, stating:

Section 22.3 of the Code provides "all expenses of such work shall be paid by the person desiring to examine or copy." I deem this provision to be broad enough to cover retrieval expenses, supervisory ex-

pense and copy fees. These charges must be "reasonable" and in the case of copy fees must not exceed the cost of providing the service. If Petitioner asks for records under Chapter 22, she is subject to these provisions. If she invokes Rule 306.5 in her request, she is subject to the rule the same as any member of the public. If she requests copies and other services not· ordinarily provided to school board members as a whole in her capacity as a board member, it is well within the authority of the board to require her to pay the cost in a manner similar to that provided for in Chapter 22.

The first question we must· answer is whether the legislature intended to allow entities covered under chapter 22 to charge members of the public a fee to cover the cost of retrieving public records.[5] The answer to this question, of course, depends upon our interpretation of the statute.

Our goal in interpreting statutory language is to give effect to the intent of the legislature. *Lockhart v. Cedar Rapids Community School Dist.*, 577 N.W.2d 845, 847 (Iowa 1998). In doing so, we " 'consider the objects sought to be accomplished and the evils and mischiefs sought to be remedied, seeking a result that will advance, rather than defeat, the statute's purpose.' " *Harris v. Olson*, 558 N.W.2d 408, 410 (Iowa 1997) (quoting *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977)). We find that the language of Iowa Code section 22.3 concerning retrieval fees is ambiguous and thus we may look beyond the statute for its meaning. *State v. Ahitow*, 544 N.W.2d 270, 272 (Iowa 1996) (court may use rules of statutory interpretation to determine legislative intent when language of statute is ambiguous). In doing so, we look at what the legislature said, rather

than what it should or might have said. Iowa R.App. P. 14(f)(13). "Absent legislative definition or a particular and appropriate meaning in law, we give words their plain and ordinary meaning." *Ahitow*, 544 N.W.2d at 272. We also consider the context in which the words are used. Iowa Code § 4.1(38). Keeping these rules in mind, we turn to the language of the statute.

Section 22.3 does not expressly establish a procedure for retrieving public records requested pursuant to chapter 22, but does expressly authorize the charging of reasonable fees for necessary expenses incurred during examination and copying of public records. Specifically, a reasonable fee may be charged to cover expenses associated with (1) providing a place for examining and/or copying records; (2) supervising the records during examination and/or copying; (3) and photocopying public records. Section 22.3 also states that "[a]ll expenses of such work shall be paid by the person desiring to examine or copy." The phrase "such work" appears several times in section 22.3 and apparently refers back to the first sentence in the section which uses the terms "examination and copying" in reference to the rights established in section 22.2.

Reading the statute as a whole, we conclude that the provisions of section 22.3 generally contemplate reimbursement to a lawful custodian of public records for costs incurred in retrieving public records. We find the phrase "all expenses of such work" to be especially significant and indicative of the legislature's intent that a lawful custodian has the authority to charge a fee to cover the costs of retrieving public records. Thus, access to public records does not necessarily

---

5. Whether a public body may charge a fee to cover the costs of retrieving or searching for requested records varies with each state. Fourteen states and the District of Columbia provide that the cost of searching for and retrieving records may be included in copy fees. *See* John Bender, *Solid–Gold Photocopies: A Review of Fees for Copies of Public Records Established Under State Open Records Laws* Urb. Law., Winter 1997, at 93–94. These states include Alaska, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Rhode Island, Utah, Virginia and Wisconsin. *Id.*

Eight state statutes specifically allow public agencies to recover labor costs associated with providing copies of public records. *Id.* at 92. These states include Alaska, Colorado, Kansas, Michigan, Minnesota, Oregon, Texas and Utah. *Id.*

On the other hand, Idaho, Kentucky and Florida exclude *labor* charges from copy fees. *Id.* at 93.

Idaho, Illinois, and Indiana specifically prohibit charges for records searches. *Id.* at 94.

mean "free" access. We recognize that permitting entities covered under chapter 22 to charge members of the public a fee to cover the cost of retrieving public records does, to some extent, limit public access to public records. While the legislature did not intend for chapter 22 to be a revenue measure, at the same time it did not intend for a lawful custodian to bear the burden of paying for all expenses associated with a public records request. We thus reject Rathmann's interpretation that the words "expenses," "fees" and "payment" in the section were only intended to cover the costs of supervising or photocopying the documents.

We also believe that the fee charged by the school district concerning a member of the public is reasonable in light of Rathmann's broad request for "all working papers, correspondence and documentation regarding the Administrative Structure Review Team." Policy 306.5 establishes a threshold point (thirty minutes of staff time) at which the school district begins to charge a fee for retrieving requested records. Thus, no retrieval fee is charged where retrieval of requested records is estimated to take one half hour or less.

Additionally, at the time of this request, the Review Team had not yet filed a report. Thus, the documents pertaining to Rath-

mann's request consisted of notes and papers from numerous school district employees. Gathering these documents thus involved more than just searching for papers in a file cabinet.[6]

We conclude that allowing entities covered under chapter 22 to charge members of the public a fee to cover the cost of retrieving public records is consistent with the purpose and meaning of Iowa Code section 22.3.[7] The district court properly concluded that policy 306.5 is valid under Iowa's freedom of information statute as applied to a member of the public.

### B. Applicability of *Gabrilson*.

■ Rathmann further contends that even if Iowa Code section 22.3 allows the school district to charge members of the public a "retrieval fee," that our decision in *Gabrilson* precludes the school district from charging school board members a fee to cover the costs of retrieving requested school district records. Rathmann therefore asks us to clarify and extend our ruling in *Gabrilson* to preclude a school district from charging school board members a retrieval fee.

We agree with plaintiff Rathmann's contention that our decision in *Gabrilson* prohib-

---

6. Superintendent Allison assigned an administrator working on the team to gather the requested working papers and estimated that the time for gathering the papers from team members would be approximately two hours at a cost to the district of $32.81 per hour for the administrator's time, and that supervision of one hour would be needed at a cost to the district of $10.05 per hour for a clerical worker's time.

7. *Cf.* 1982 Op. Att'y Gen. 207 (concluding that public body may charge a fee to cover reasonable expenses incurred in making information that is contained in electronic storage systems, such as magnetic tapes and cards, available to a citizen for examination and/or copying);1972 Op. Att'y Gen. 541 (concluding county treasurer may charge a fee for searching motor vehicle records to ascertain owner of a certain car, but any such fees collected belong to the county); 1968 Op. Att'y Gen. 656 (stating lawful custodian may charge a reasonable fee for his or her services in supervising the records while records are copied but that fee should be closely related to the actual cost of supervision); 1996 Op. Att'y Gen. 120 (concluding that county has no authority under section 22.3 to impose a charge for computer system's depreciation, maintenance, elec-

tricity, and insurance associated with retrieving computerized public record or its budget; right to recover various costs or expenses incurred in examining or copying public records is limited to "actual costs" incurred in copying). Although we are not bound by opinions of the attorney general, we do give respectful consideration to such opinions. *See First Iowa State Bank v. Iowa Dep't of Natural Resources*, 502 N.W.2d 164, 167 (Iowa 1993).

Public access to data processing software is now covered by Iowa Code section 22.3A. *See* 1996 Iowa Acts ch. 1099, § 15.

The federal Freedom of Information Act allows federal agencies to charge a fee for processing requests for information. *See* 5 U.S.C. § 552(a)(4)(A)(I) (1994). Each federal agency is required to issue regulations specifying the applicable fees and guidelines for determining when such fees should be waived or reduced. *Id.* The fees must conform to the guidelines promulgated by the Director of the Office of Management and Budget, which shall provide a uniform schedule of fees for all agencies. *Id.;* OMB Uniform FOIA Fee Schedule and Guidelines § 1 (52 Fed.Reg. 10017, March 27, 1987). *See also* 37A Am. Jur.2d *Freedom of Information Acts* § 452–455 (1994).

its a school board from charging a school board member a retrieval fee to cover the cost of making school district records available to a board member, so long as the request for records is reasonable.

In *Gabrilson*, we affirmed a school board member's right of access to information for purposes of examining the legality of school board action. 554 N.W.2d at 275. We did not consider the legality of a retrieval fee since that issue was never presented to us. We did, however, discuss a school board member's right of access to school district records and documents in connection with discharging his or her duties as a board member. We noted that " 'members of the Board of Education occupy a fiduciary position and are under a duty to make detailed inquiry into any matter which appears to be wrong.' " *Id.* (quoting *Lane v. Blair*, 162 W.Va. 281, 250 S.E.2d 124, 126 (1978)). We thus stated that in order to adequately exercise the authority granted to them, school board members "generally should be allowed access to both public and private [school district] records that are necessary for the proper discharge of their duties." *Id.*

■ In view of our holding in *Gabrilson* we believe that a school board member should be allowed to obtain copies of any school district records, that she has a right to see, at no cost to the school board member. Forcing a school board member to pay for copies of school district records would surely interfere with a board member's ability to properly discharge her duties as a board member and cannot be allowed. Although there is, of course, the potential for abuse with respect to a school board member's right of access to school district records, we are confident that most records requests would not unduly place a financial strain on the school district.

We also point out that by its express terms, board policy 306.5 seems to apply only to members of the public; there is nothing in the language of policy 306.5 to suggest that it applies to school board members who have special statutory fiduciary duties by virtue of their office. Thus, policy 306.5 does not appear to be a legitimate basis for charging a school board member a fee to cover the cost

of fulfilling a board member's request for school district records.

In summary, we agree with the district court's conclusion that a public body covered under Iowa Code section 22.3 may charge members of the public a retrieval fee associated with a public records request. This fee may include the cost of paying the wages of a person hired by the lawful custodian to retrieve the requested records, but must be reasonable in light of the circumstances surrounding the request. We conclude, however, that a school district may not charge a school board member a retrieval fee associated with a board member's request for records that the board member has a right to see. We therefore reverse the judgment of the district court as to this issue.

### IV. Board Policy 902.5.

In her second issue on appeal, Rathmann contends that the district court erred in upholding board policy 902.5. Rathmann's challenge concerning policy 902.5 is based on two grounds. First, she challenges the *method* by which the superintendent has authority to seek private legal counsel. Second, she challenges the *purposes* for which private counsel may be utilized by the school district.

### A. The decision to consult with legal counsel.

■ Policy 902.5 provides:

Legal Counsel

The Board of Directors at the annual meeting held in July shall appoint an attorney to represent the corporation and advise the Board. The attorney shall be paid on a "time" or "retainer" basis as determined by the Board in accordance with an annual contract. Upon request of the Superintendent or President of the Board, the primary and/or secondary general partner (or in the event of their unavailability such other member of the firm as the Superintendent or President shall request) shall attend regular or special meetings of the Board of Directors or committees thereof to render advice and opinions on such matters as may be requested. *The*

*line of communication concerning legal consultation and advice from the attorney shall be through the Board of Directors' President in the case of board members and through the Superintendent of Schools in the case of administrators.*

(Emphasis added.)

As policy 902.5 shows, once a year the school board decides *who* will represent the school district concerning school district matters for the upcoming year. The superintendent then has authority to decide when to consult with private legal counsel concerning school district matters. The Board appointed the law firm of Lane & Waterman to represent the school district for the 1994–95 school year, which is the year relevant to the present dispute.

Rathmann agrees with the Board's right to designate an attorney or law firm to represent the school district. However, Rathmann contends that policy 902.5 is illegal because it impermissibly delegates discretionary authority to the superintendent to decide *when* to consult with or retain private legal counsel concerning a specific issue. Rathmann asserts that the decision to consult or retain private legal counsel is discretionary because it involves the exercise of judgment and discretion. Because such a decision is discretionary, Rathmann asserts that it is one that must be decided by a vote of the board at a public meeting. In other words, Rathmann claims that the full board must vote its approval *every time* the superintendent deems it necessary to consult with legal counsel concerning a particular issue.[8] Because the full Board was not consulted prior to hiring attorney Anderson of Lane & Waterman to develop policy 306.5, Rathmann therefore contends that policy 306.5 is invalid.

In *Gabrilson*, we reiterated the rule that a school board cannot abrogate its power to regulate school district affairs to the superintendent. *Gabrilson*, 554 N.W.2d at 276. We also noted that a school board cannot delegate the exercise of any discretionary power conferred on it by law to another member or officer. *Id.* We concluded in *Gabrilson* that the decision whether to allow a school board member to see school district records is a discretionary decision, not ministerial or administrative, and that this is the type of discretionary decision that the legislature empowered the school board to make. *Id.*

We conclude that the district court properly determined that a school district superintendent has authority under Iowa law to decide when to seek legal advice and that such decision does not need to be presented to the whole board each time. First, we find that giving the superintendent the authority to decide when to seek legal advice does not involve an impermissible delegation of a discretionary function. The school district, as a corporation, must act through its officers. Here, the superintendent is the officer who has the responsibility of deciding when to seek legal advice from the legal counsel designated by the school board for that particular year. While the decision whether to seek legal advice is an exercise of discretion on the part of the superintendent, we do not believe that it is the type of decision that the legislature intended for only the Board to make.

Second, Rathmann's suggestion that the full board be consulted each time the school district wishes to consult with legal counsel on a particular issue is simply impractical. Many times situations arise in a school district that demand immediate action and consultation with legal counsel cannot always be delayed until after the next school board meeting without risking serious adverse consequences for the school district. We also point out that the Board has the authority to later ratify or invalidate actions taken by the

---

8. In addressing this issue, it is important to consider the real reason why Rathmann challenges the validity of policy 902.5. Rathmann contends that as a result of the problems created by Gabrilson's requests to see certain school district records, that the Board devised a scheme to discourage requests for school district records, the result of this scheme being policy 306.5 and its retrieval fee provisions. Rathmann claims that the board president and the superintendent sought legal advice from Carole Anderson, an attorney in the Lane & Waterman law firm, for assistance in developing policy 306.5. Pursuant to policy 902.5, the board president and superintendent did not consult the full board prior to seeking advice from Anderson.

superintendent in response to legal advice provided by counsel for the school district.

Additionally, we believe that a school district's authority to "employ an attorney to represent the school corporation *as necessary* for the proper conduct of the legal affairs of the school corporation" found in Iowa Code section 279.37 is further support for our conclusion that a superintendent may seek legal advice without consulting the whole board. *Cf. Bishop v. Iowa State Bd. of Pub. Instruction*, 395 N.W.2d 888, 893 (Iowa 1986) (school board has discretionary authority under section 279.37 to pay legal expenses of superintendent arising out of a challenge to his or her official actions in carrying out policies of school district).

We conclude that the provision in policy 902.5, which grants the superintendent the authority to decide when to consult with private legal counsel, complies with Iowa law. The district court's ruling on this issue is affirmed.

### B. Can private counsel give advice concerning school district matters?

■ Even if a superintendent has the authority to decide *when* to consult with legal counsel, Rathmann contends that Iowa Code section 331.756(7) mandates that only the county attorney may provide legal advice to the Board concerning school district matters. Conversely, Rathmann claims that private legal counsel is limited to representing the school district in litigation proceedings.

Iowa Code section 331.756(7) states that the county attorney shall:

Give *advice* or a written opinion, without compensation, to the board and other county officers and to school and township officers, *when requested by an officer,* upon any matters in which the state, county, school, or township is interested, or relating to the duty of the officer in any matters in which the state, county, school, or township may have an interest, but the county attorney shall not appear before the board at a hearing in which the state or county is not interested.

(Emphasis added.)

Rathmann thus draws a distinction between the concept of "legal advice" and "legal representation." Under her interpretation, legal advice relates to advising the school district or providing a legal opinion on a particular matter whereas legal representation relates to the school district's involvement in litigation. Rathmann asserts that Iowa Code section 279.37 is further indication that private counsel cannot give a school district legal advice as to a particular situation, but is limited to representing the school district in litigation. Iowa Code section 279.37 provides:

A school corporation may employ an attorney to *represent* the school corporation *as necessary* for the proper conduct of the *legal affairs* of the school corporation.

(Emphasis added.)

Under Rathmann's interpretation of section 279.37, the superintendent was authorized to seek "advice" concerning adoption of policy 306.5 only from the county attorney. She says that because the superintendent sought advice from private attorneys, the superintendent's actions were illegal and policy 306.5 is likewise invalid. As a matter of policy, Rathmann asserts that the county attorney is the only appropriate legal authority to give "advice" to a school district because private counsel hired by the school district will only give legal opinions which support the school district's predetermined course of action and will not provide impartial advice.

Iowa Code section 279.37 as it now reads was enacted in 1980. Prior to the 1980 amendment, section 279.37 read as follows:

In all cases where actions may be instituted by or against any school officer to enforce any provision of law, the board may employ counsel, for which the school corporation shall be liable.

Iowa Code § 279.37 (1979). The explanation by the Iowa Senate judiciary committee given for enactment of the bill to amend section 279.37 into its present form was as follows:

This bill allows a school corporation to employ an attorney as necessary to handle the legal affairs of the school corporation.

Currently a school board may retain an attorney only when an action arises.

S.F. 426, 68th G.A., 2d Sess. (Iowa 1980).

After careful reading of the above-cited statutes, we conclude as the district court did, that Rathmann's contentions on this issue have no merit. First, we believe that the legislature's decision to amend section 279.37 is indicative of the legislature's intent to eliminate any distinction between the terms "legal advice" and "legal representation." Additionally, we believe that the term "legal affairs" was intended to apply to all situations for which a school district might seek the services of an attorney, whether it be in response to a pending lawsuit, or for assistance in making a personnel or policy decision. While there may have been historical differences between the two terms, we see no reason to maintain that distinction in today's legal environment.

Second, we find nothing in Iowa Code section 331.756(7) that precludes a school district from hiring private counsel concerning school district affairs or makes the county attorney the exclusive legal authority for advice concerning school district matters. That section simply defines the duties of a county attorney and only requires a county attorney to provide legal representation to a school district "when requested by an officer."

The district court properly concluded that a school district may hire private counsel to provide legal representation concerning school district matters, whether it be in response to pending litigation or simply providing a legal opinion. We affirm the ruling of the district court on this issue.

## V. Disposition.

We conclude that entities covered under Iowa Code chapter 22 may charge members of the public a retrieval fee to cover the costs of retrieving public records. Board policy 306.5 thus complies with Iowa law as applied to members of the public. We further conclude, pursuant to our prior decision in *Gabrilson,* that a school district may not charge a school board member the same type of fee to inspect school district records which the board member has a right to see in his or her capacity as a school board member. We also conclude that a superintendent has the authority to decide when to seek legal advice concerning school district matters, once the school board has approved legal counsel for the school year, and that the school district may consult private counsel for any legal matters involving the school district. Board policy 902.5 thus complies with Iowa law. We therefore affirm in part and reverse in part the judgment of the district court.

Costs on appeal are taxed three-fourths to appellant Rathmann and one-fourth to appellees.

**AFFIRMED IN PART AND REVERSED IN PART.**