# IN THE SUPREME COURT OF IOWA

No. 23–0833

Submitted February 20, 2024—Filed June 7, 2024

**ROBERT TEIG,**

    Appellant,

vs.

**VANESSA CHAVEZ, ALISSA VAN SLOTEN, PATRICIA G. KROPF, ELIZABETH JACOBI, BRAD HART,** and **TERESA FELDMANN,**

    Appellees.

---

Appeal from the Iowa District Court for Linn County, Lars G. Anderson, Judge.

Private citizen appeals summary judgment granted to city officials on his claims for violations of the Iowa Open Records Act. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Robert Teig (argued), Cedar Rapids, pro se.

Andrew T. Tice (argued) and Kristine R. Stone of Ahlers & Cooney, P.C., Des Moines, for appellees.

Cathy S. Trent-Vilim of Lamson Dugan & Murray LLP, Omaha, Nebraska, and Jason Palmer and Ryan Tunink of Lamson Dugan & Murray LLP, West Des Moines, for amicus curiae Iowa League of Cities.

Thomas Story and Rita Bettis Austen of ACLU of Iowa, Des Moines, for amici curiae Iowa Freedom of Information Council and American Civil Liberties Union Foundation of Iowa, Inc.

**OXLEY, Justice.**

Iowa's Open Records Act (the Act) prioritizes "free and open examination of public records." Iowa Code § 22.8(3) (2021). It creates a presumption that the public has a right to access public records, guaranteeing some level of transparency and accountability in the work of state and local governments. However, transparency is not absolute. In this case, we consider the extent of certain limitations the general assembly has placed on open records requests in the context of hiring government employees.

In 2021, the City of Cedar Rapids (the City) hired a new city clerk and city attorney. Plaintiff Robert Teig took an interest in the City's hiring processes and submitted open records requests for job applications and several other documents. The City refused to fulfill many of Teig's requests, claiming the attorney–client privilege and the Act's confidentiality provisions exempted several documents from disclosure. Teig filed suit, seeking production of the requested documents, statutory damages, and declaratory and injunctive relief. The district court granted the City's motion for summary judgment.

On appeal, Teig raises five arguments: (1) job applications submitted to governmental bodies are not confidential under chapter 22, (2) municipalities cannot claim attorney–client privilege in the context of an open records request, (3) search and retrieval fees are not authorized by chapter 22, (4) defendants unreasonably delayed fulfilling certain requests, and (5) the district court should have granted him leave to submit additional interrogatories in the ensuing litigation.

We conclude that the district court correctly found that documents subject to the attorney–client privilege are protected from disclosure under chapter 22 and that chapter 22 authorizes municipalities or governmental bodies to charge search and retrieval fees. While job applications are generally protected from

disclosure, that protection extends only to persons "outside of government." *Id.* § 22.7(18). Thus, the City was obligated to disclose those applications submitted by current employees of the City, although it properly withheld external applications. The district court failed to address Teig's claims of undue delay related to billing records on the basis that the request was mooted when Teig later received them. That a document is eventually received from another source does not necessarily moot a claim of unreasonable delay. For the reasons explained below, we affirm in part and reverse in part the district court's grant of summary judgment and remand for further proceedings. We also affirm the district court's denial of Teig's motion to submit additional discovery.

### I. Factual Background.

The City hired longtime employee Alissa Van Sloten as its new city clerk in May 2021. After Van Sloten was hired, City Attorney Jim Flitz wrote a letter expressing his legal opinion that job applications were confidential under Iowa's Open Records Act. That summer, Flitz retired, and the City advertised the city attorney vacancy through a third-party consultant, Novak Consulting Group. Elizabeth Jacobi and Vanessa Chavez submitted applications. At the time they applied, Jacobi was employed by the City as an assistant city attorney, and Chavez was serving as city attorney for Green Bay, Wisconsin.

Some city attorney candidates requested that their applications not be made public. The city council solicited a legal opinion from outside counsel as to whether it could review applications in a closed session. After receiving assurance that the process was allowed, the city council entered a closed session on October 12, 2021, to review applications. Chavez was ultimately hired, and Jacobi stayed on as assistant city attorney.

After learning about this closed session, Robert Teig requested several documents related to the City's hiring process for both the city clerk and city attorney positions. Over several months, he submitted requests to Van Sloten, Chavez, Jacobi, and the other defendants in this case: Cedar Rapids Mayor Brad Hart, Human Resources Director Teresa Feldmann, and Assistant City Attorney Patricia Kropf.

First, Teig requested Van Sloten's job application for the city clerk position. Kropf informed him that the record was confidential. He then requested city attorney applications, Novak's job posting for the city attorney position, applicant "requests to close the interviews," and the legal opinion that precipitated the October 12 closed session. Feldmann asserted attorney–client privilege over the legal opinion, but indicated she would work on producing the other records. She also told Teig that, under City policy, he would be charged $20 per hour for searches exceeding thirty minutes. On November 23, the city council held another closed session to discuss Teig's request for job applications and the possibility that Teig might file a lawsuit under the Act to seek access to withheld documents.

Having not yet received these documents, Teig filed this suit the following day on November 24 in Linn County District Court.

On December 14, Mayor Hart sent Teig the job posting. Hart also reasserted the City's claims of confidentiality over the job applications and privilege over the legal opinion, and he informed Teig there were no responsive documents related to requests for closed interviews. However, Chavez later provided Teig with redacted copies of requests by applicants for the city attorney position that the City review their applications in a closed session.

Teig made additional requests after filing this suit. On December 6, Teig sought information about the November 23 closed session, requesting "the name

of the litigation, name of any attorney involved, and bills and expenditures related to the matter." Jacobi, then serving as acting city attorney, sent Teig minutes from the open portion of the November 23 session. However, she claimed there were no documents related to litigation or billing, and the City would review relevant documents it received for privileged information. Teig received redacted billing documents directly from the City's outside counsel as part of discovery related to this litigation on March 10, 2022, in a file labeled: "FINAL APPROVED BILLINGS TO SEND TO TEIG APPROVED BY CITY."

Shortly after the December 6 request, Chavez took over as city attorney and asked Teig to direct all future document requests through her office in light of his litigation against City officials. She sent instructions on this procedure to City employees as well. Teig resisted this arrangement and, on March 11, requested a copy of the instructions. Chavez forwarded them to Teig on March 18. Teig filed an amended petition on March 19, 2022, which included claims related to the November 23 closed session and Chavez's instructions that all requests go through her.

On October 14, 2022, the defendants filed a motion for summary judgment. They argued that the employment applications were confidential and that the legal opinion regarding the closed-session review of applications was protected by attorney–client privilege. They also defended the City's search and retrieval fees and rejected Teig's claims that any disclosures were untimely.

Rather than formally resisting summary judgment, Teig filed a motion to compel and for sanctions against Chavez, seeking to force additional discovery. He also sought to serve additional discovery requests on Van Sloten, Feldmann, Jacobi, and Kropf, and to correct a previous interrogatory sent to Hart. Teig claimed he mistakenly sent requests to the wrong defendants, and this war-

ranted exceeding the thirty interrogatories allowed under Iowa Rule of Civil Procedure 1.509(1)(*e*). The district court denied Teig's request for additional discovery on March 7, finding he had not shown good cause.

The district court granted the defendants' motion for summary judgment on May 18, 2023. The court found that all employment applications were confidential and that the legal opinion was privileged. It also upheld the City's search and retrieval fee policy and rejected all claims of refusal and unreasonable delay. Teig appealed, and we retained the appeal.

**II. Analysis.**

**A. Interrogatories.** We start by disposing of Teig's claim that the district court erred in its discovery ruling by counting subparts of his interrogatories toward the total number allowed. A district court's evidentiary rulings are reviewed for abuse of discretion. *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008). Iowa Rule of Civil Procedure 1.509(1)(*e*) limits interrogatories in civil litigation to thirty. The district court concluded that the defendants "arguably responded to *more* than 30 interrogatories." This court has "consistently accorded the trial court[] broad discretion in superintending discovery." *Munzenmaier v. City of Cedar Rapids*, 449 N.W.2d 369, 371 (Iowa 1989). We see no reason to depart from this principle here, and we affirm the district court's denial of Teig's motion to submit additional discovery and request for immediate consideration of discovery issues.

**B. Iowa's Open Records Act.** We turn now to Teig's chapter 22 claims, on which the district court granted summary judgment. We review a district court's grant of summary judgment for corrections of errors at law. *Story Cnty. Wind, LLC v. Story Cnty. Bd. of Rev.*, 990 N.W.2d 282, 285 (Iowa 2023). "The district court should grant summary judgment if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of

law.'" *Id.* (omission in original) (quoting Iowa R. Civ. P. 1.981(3)). We review the record in the light most favorable to Teig as the party opposing the motion. *See Koster v. Harvest Bible Chapel–Quad Cities*, 959 N.W.2d 680, 687 (Iowa 2021).

Under section 22.10 of the Act, "[a]ny aggrieved person . . . may seek judicial enforcement of the requirements of [chapter 22] in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances." Iowa Code § 22.10(1).[1] Claimants must meet three requirements to sustain a cause of action under the Act: (1) "the defendant is subject to the requirements" of chapter 22, (2) "the records in question are government records," and (3) "the defendant refused to make those government records available for examination and copying by the plaintiff." *Id.* § 22.10(2); *see also Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 460 (Iowa 2013). If these requirements are met, the burden shifts to the defendant to show, by a preponderance of the evidence, that they have complied with the statute. Iowa Code § 22.10(2)–(3); *Horsfield*, 834 N.W.2d at 460.

Here, there is no dispute that the first two requirements are met. As for the third requirement, the defendants refused to disclose job applications and the legal opinion related to the city council's October 12 closed session, but they claim their refusals complied with chapter 22. They dispute that their actions in response to Teig's other requests amounted to a refusal under the Act. We address each contention in turn.

1. *The confidentiality of job applications under chapter 22.* While Iowa Code section 22.2 requires that public records be made available to "[e]very person,"

---

[1]None of the defendants have challenged, on appeal or in the district court, whether they are proper parties to this enforcement action. We assume, without deciding, that they fit within the catchall "any other persons who would be appropriate defendants under the circumstances." Iowa Code § 22.10(1).

section 22.7 provides a long list of exceptions, identifying those public records required to "be kept confidential," *id.* § 22.7; *see also Kirkwood Inst. Inc. v. Sand*, ___ N.W.3d ___, ___, 2024 WL 1813027, at *4 (Iowa Apr. 26, 2024) ("The statute contains a long list of exceptions protecting specific categories of records from disclosure."). The district court concluded there was "no circumstance under which [Teig] would be entitled to the employment applications under Iowa's open records law," relying on both Iowa Code sections 22.7(11) and 22.7(18). Section 22.7(11) protects "confidential personnel records" from disclosure. Iowa Code § 22.7(11). Section 22.7(18) protects communications "made to a government body or to any of its employees by identified persons outside of government," where the government body receiving the communication "could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination." *Id.* § 22.7(18). Access to job applications for government jobs has been a source of open records disputes for some time, so we start with a brief review of prior caselaw and legislative reaction to it.

We first addressed whether applications for government jobs were subject to the Act in *City of Dubuque v. Telegraph Herald, Inc.* 297 N.W.2d 523, 526 (Iowa 1980), *superseded by statute*, 1984 Iowa Acts ch. 1185 § 6, *as recognized in City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895 (Iowa 1988). At the time we decided *Telegraph Herald*, Iowa Code section 68A.7(11) (1979), the predecessor to section 22.7(11), exempted "[p]ersonal information in confidential personnel records of public bodies including but not limited to cities, boards of supervisors and school districts." *See Tele. Herald*, 297 N.W.2d at 526. There was no equivalent to section 22.7(18) at the time. We construed the language in subsection (11) narrowly and determined that it did not shield employment applications from disclosure. *Id.* at 527.

In 1984, the general assembly added a new subsection (18) to section 68A.7. 1984 Iowa Acts ch. 1185, § 6 (originally codified at Iowa Code § 68A.7(11) (1985), now codified as amended at Iowa Code § 22.7(18) (2021)). Four years later, we again considered how the Act (moved from chapter 68A to chapter 22) applied to employment applications in *City of Sioux City v. Greater Sioux City Press Club*. 421 N.W.2d at 897. Relying on section 22.7(18), we concluded the general assembly had "chosen to use broadly inclusive language," and the narrow construction we applied in *Telegraph Herald* was no longer appropriate. *Id.* (holding that "*Telegraph Herald* . . . no longer provide[d] a useful guidepost for resolving" questions related to employment applications). Rather, subsection (18) represented a "legislative goal to permit public agencies to keep confidential a broad category of useful incoming communications which might not be forthcoming if subject to public disclosure," and we concluded that "employment applications fall within this area of legislative concern." *Id.* at 898. More than a decade later, in *Clymer v. City of Cedar Rapids*, we observed that "the legislature . . . amended the statute [after *Telegraph Herald*] to cloak employment applications with privacy." 601 N.W.2d 42, 46 (Iowa 1999).

With this background, we consider the parties' arguments as applied to the job applications Teig requested.

a. *Section 22.7(11).* Section 22.7(11) exempts from disclosure "[p]ersonal information in confidential personnel records of government bodies relating to identified or identifiable individuals who are officials, officers, or employees of the government bodies." Iowa Code § 22.7(11)(*a*) (2021).

The defendants argue that under *Press Club* and *Clymer*, job applications are categorically exempted from disclosure. Their reliance on these cases is misplaced. While *Press Club* directly addressed employment applications, the decision did not rely on section 22.7(11) like *Telegraph Herald* had. *See Press*

*Club*, 421 N.W.2d at 898. Rather, *Press Club* exempted employment applications from disclosure as "useful incoming communications" under section 22.7(18). *Id. Clymer* fairs no better. While that case did apply section 22.7(11), the plaintiffs were requesting records related to sick leave compensation rather than employment applications. *Clymer*, 601 N.W.2d at 43. The observation about employment applications was not related to a section 22.7(11) analysis, but to section 22.7(18). *See id.* at 45–46 (discussing caselaw under various provisions of chapter 22 in an effort to delineate the scope of the "privacy exemption" in § 22.7(11)). *Telegraph Herald* remains good law to the extent it held that job applications are not protected as personnel records for purposes of section 22.7(11). *See* 297 N.W.2d at 526. Thus, section 22.7(11) does not protect any of the employment applications Tieg requested from disclosure.

b. *Section 22.7(18).* Iowa Code section 22.7(18) exempts certain voluntary communications made to government bodies by persons outside of government from disclosure. The exemption applies to a communication if it fits four criteria: it "is (1) not required by law and (2) made to a government body (3) by someone outside government, and (4) the [government body] could reasonably believe that the sender would be discouraged from making such communications if [the government body] publicly disclosed it."[2] *Kirkwood Inst.*, ___ N.W.3d at ___, 2024 WL 1813027, at *10 (applying § 22.7(18) to emails unconnected to the documents requested and sent to the auditor's office by a member of the public).[3] In

---

[2]Teig argues the first requirement is not met for any job application, claiming no person could apply for any government position without submitting an application. We rejected this argument in *Press Club*, where we held that "[t]he candidates were not required to submit these applications because they were not required to apply for the job." 421 N.W.2d at 898. Teig's reprise of his *Press Club* predecessors' argument must meet the same fate.

[3]Section 22.7(18) includes three express exceptions to its confidentiality protection: (1) the communication's sender consents; (2) the information can be disclosed without identifying

*Press Club*, we held that employment applications fit within the "broad category of useful incoming communications" protected by subsection (18), limiting our holding to "[t]he employment applications which are involved in the present litigation." 421 N.W.2d at 898–99.

However, *Press Club* did not address Iowa Code section 22.7(18)'s limitation to "persons outside of government," the third criterion identified above. *See Kirkwood Inst.*, ___ N.W.3d at ___, 2024 WL 1813027, at *10. And that case was decided before the general assembly amended section 22.7(18) in 2001. *See* 2001 Iowa Acts ch. 108, § 1. That amendment expressly excludes two categories of individuals from being considered "persons outside of government":

> As used in this subsection, "persons outside of government" does not include persons or employees of persons who are communicating with respect to a consulting or contractual relationship with a government body or who are communicating with a government body with whom an arrangement for compensation exists.

*Id.* (codified at Iowa Code § 22.7(18) (Supp. 2001)). The protection provided for voluntary communications under subsection (18) applies only to persons outside of government; people who fit either of these categories do not qualify for that protection. Teig argues that this amendment exempts all employment applications submitted to government entities from section 22.7(18)'s protection.

The scope of this limitation came before us recently in *Ripperger v. Iowa Public Information Board*, 967 N.W.2d 540 (Iowa 2021). That case involved a request for a list of property owners who asked the Polk County Assessor to remove them from the name search function of the assessor's website. *Id.* at 552. Notably, in defining this type of communication as fitting within the "broad category of useful incoming communications [under section 22.7(18)] which might not be

---

the provider; and (3) information must be provided to the extent it identifies specifics surrounding the commission of a crime. Iowa Code § 22.7(18)(*a*)–(*c*). Teig does not suggest any of these exceptions apply to the job applications.

forthcoming if subject to public disclosure," *id.* at 553 (alteration in original) (emphasis omitted) (quoting Iowa Code § 22.7(18)), we cited with approval to *Press Club*, explaining that "[p]resumably some of those job applicants would have thought twice about applying if doing so put them on a public list that could be seen by their current employer," *id.* at 551. Ripperger also argued that even if some requests from property owners were protected from disclosure, that protection should not apply to government employees because they were not "persons outside of government." *Id.* at 552. We declined to address that argument because it had not been adequately briefed or decided in earlier proceedings. *Id.* (noting that "[t]he 'outside of government' issue was thinly briefed below" but was not reached by the district court).

The broad categories of useful incoming information covered by Iowa Code section 22.7(18) are protected from disclosure only if the communication is received from "persons outside of government." The 2001 revision sought to clarify two specific groups of individuals who are deemed not "outside of government" and whose communications are therefore not protected from disclosure under section 22.7(18). The provision identifies two specific categories of people: (1) those "communicating with respect to a consulting or contractual relationship with a government body," or (2) those communicating with a government body with whom they have an "arrangement for compensation." Iowa Code § 22.7(18). The first focuses on communications *about* a particular relationship, while the second focuses on communications *between parties to* a particular relationship.

The district court addressed the first part of the provision, agreeing with the defendants that "the persons 'outside of government' language . . . appears to apply to consultants and contractors," concluding that nothing in the lan-

guage negated the holding in *Press Club* that employment applications are confidential. Teig argues the general assembly chose the word "contractual," not "contractor," and applications for employment are submitted "with respect to a . . . contractual relationship."

A familiar principle of statutory construction is that "when identical language is used in several places in an enactment, we ordinarily give it the same meaning." *B.A.A. v. Chief Med. Officer, Univ. of Iowa Hosp.*, 421 N.W.2d 118, 125 (Iowa 1988). The converse also holds true—use of materially *different* language indicates different meanings are intended. *See Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 853 (Iowa 2014) ("If the drafters intended the two concepts to be coextensive, different words would not have been used."); *see also Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (applying the "meaningful-variation canon" and citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012), for the proposition that "[w]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." (second alteration in original)). We also consider the *noscitur a sociis* canon, under which we interpret groups of words in light of their association with each other so long as they "ordinarily have a similar meaning." *Fleur de Lis Motor Inns, Inc. v. Bair*, 301 N.W.2d 685, 690 (Iowa 1981) (quoting 2A J.G. Sutherland & C. Dallas Sands, *Statutes and Statutory Construction* §§ 47.16–.17 (4th ed. 1973)).

In section 22.7(18), the general assembly refers separately to "consulting or contractual relationship" and "arrangement for compensation." Iowa Code § 22.7(18). "[A]rrangement for compensation" used in the second definition would clearly cover an employment relationship. *Id.* Employment is often at-will

(so not covered by a contract), but by definition it always includes an "arrangement for compensation." Teig argues that "contractual relationship" also encompasses employment contracts. But we cannot ignore this difference in terminology. *See Chiodo*, 846 N.W.2d at 853. Nor can we ignore the pairing of "contractual" with "consulting" in the phrase "consulting or contractual relationship," neither of which suggest an employment relationship—especially when paired together. *See Wright v. State Bd. of Eng'g Exam'rs*, 250 N.W.2d 412, 413 (Iowa 1977) ("[T]he meaning of a word is ascertained in the light of the meaning of words with which it is associated."). Given this shift in language, we agree with the district court that "consulting or contractual relationship" refers to consultants and contractors, whose relationship with governmental bodies is different than the compensation arrangements extended to government employees.

However, that does mean that *Press Club* protects all employment applications from disclosure, as the district court concluded. The second category of persons excluded from protection under the 2001 revision are persons "who are communicating with a government body with whom an arrangement for compensation *exists*." Iowa Code § 22.7(18) (emphasis added). As discussed, an "arrangement for compensation" clearly covers employees. And use of the present tense "exists" limits the reach to only current employees of the particular governmental body—the one "with whom [the] arrangement for compensation exists." *Id.* Thus, communications between current (but not prospective) employees and the governmental body that employs them—including applications for a new position with the employing body—are not made by persons "outside of government" and therefore are not protected from disclosure under section 22.7(18).

While subsection (18) is intended to protect a "broad category of useful incoming communications," *Press Club*, 421 N.W.2d at 898, we cannot ignore the general assembly's additional limitation that the protection covers only those

communications received from "persons outside of government," Iowa Code § 22.7(18). It may be that the threat of possible disclosure of an application may deter both internal and external candidates for a government job, but that is a policy consideration best left to the legislative branch. *See Press Club*, 421 N.W.2d at 897 ("[I]t is not the responsibility of this court to balance the competing policy interests. The balancing of those interests is the province of the legislature . . . ."). It is not unreasonable for the general assembly to conclude that any deterrent effect chapter 22 may have on potential applicants will be felt most acutely by external applicants.

Section 22.7(18) protects applications received from external candidates, meaning anyone not employed by the City when the application was submitted. But it does not exempt from disclosure applications submitted by then-current employees of the City, such as Van Sloten and Jacobi.

2. *Attorney–client privilege.* Next, we address Teig's claim that the legal opinion solicited by the City about closing city council sessions was not protected from disclosure under chapter 22 by the attorney–client privilege. Teig argues the privilege does not apply to open records requests because chapter 22 protects work product, *see* Iowa Code § 22.7(4) (exempting "[r]ecords which represent and constitute the work product of an attorney, which are related to litigation or claim made by or against a public body"), but not attorney–client communications. We reject Teig's argument as contrary to our holding in *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444.

Our cases make clear "that a governmental body may be a client for purposes of invoking the [attorney–client] privilege." *Tausz v. Clarion–Goldfield Cmty. Sch. Dist.*, 569 N.W.2d 125, 127 (Iowa 1997) (en banc); *see also Horsfield*, 834 N.W.2d at 463 (recognizing the City of Dyersville "properly asserted the attorney-client privilege"). Iowa has enshrined its attorney–client privilege in Iowa Code

section 622.10, and our caselaw recognizes that this provision effectuates a privilege "of ancient origin." *Bailey v. Chi., Burlington & Quincy R.R.*, 179 N.W.2d 560, 563 (Iowa 1970). The privilege "bars attorneys from disclosing confidential communications." *Keefe v. Bernard*, 774 N.W.2d 663, 669 (Iowa 2009).

As a general rule of disclosure, chapter 22 does not trump other specific statutory privileges protecting the confidentiality of documents. *See Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 188–89 (Iowa 1997) (holding that physician–patient privilege protected documents held by public hospital despite not being identified in section 22.7). We extended this holding to documents broadly protected by the attorney–client privilege in *Horsfield*, where we held that Iowa Code section 622.10 protected emails exchanged with counsel for the City of Dyersville notwithstanding section 22.2's disclosure requirement. 834 N.W.2d at 450–51, 463 ("[T]he [Open Records] Act does not affect other specific statutory privileges recognized by the legislature, such as the attorney-client privilege."). This holding was not dicta, as urged by Teig. Although the City of Dyersville ultimately made the tactical decision to waive the attorney–client privilege and produce the records during litigation, we still had to address whether the city's initial decision to withhold the documents violated chapter 22. *Id.* at 462–63. It was in this context that we held the attorney–client privilege protected the documents from disclosure through an open records request. *Id.* at 463. *Horsfield* controls here. The legal opinion regarding closing city council sessions was privileged and not subject to disclosure.

3. *Charges for search and retrieval.* The City has adopted an open records policy that provides records to the public at no charge if the request takes less than thirty minutes to fulfill. After the first thirty minutes, the City's policy provides that it may charge $20 per hour, prorated to the nearest fifteen minutes. Teig argues that chapter 22 does not authorize such a policy, claiming it only

allows fees related to "examination and copying." This interpretation cannot be reconciled with the plain language of the statute.

We held that chapter 22 authorized retrieval fees under an earlier iteration of the Act in *Rathmann v. Board of Directors.* 580 N.W.2d 773, 778–79 (Iowa 1998). In *Rathmann*, a schoolboard charged an hourly rate to retrieve documents related to administrative restructuring in the school district. *Id.* at 775–77. At the time, section 22.3 required that "[a]ll expenses of such work shall be paid by the person desiring to examine or copy." *Id.* at 777 (emphasis omitted) (quoting Iowa Code § 22.3 (1995)). We found the phrase "all expenses of such work" to be "especially significant and indicative of the legislature's intent" to authorize retrieval fees. *Id.* at 778–79. The general assembly has since removed this language. 2001 Iowa Acts ch. 44, § 2 (codified at Iowa Code § 20.3 (Supp. 2001)). Teig argues that its removal took with it the authority to charge retrieval fees. However, we find that the statute now provides even clearer guidance.

After the general assembly removed the language identified by Tieg, it again amended section 22.3 in 2005. *See* 2005 Iowa Acts ch. 103, § 1 (codified at Iowa Code § 22.3 (Supp. 2005)). In addition to examining public records in person, without charge, Iowa Code § 22.2(1), the 2005 amendment enable individuals to request copies of public records "in writing, by telephone, or by electronic means." 2005 Iowa Acts ch. 103, § 1 (codified at § 22.3(1) (Supp. 2005)). When such a request is made, the lawful custodian cannot "require the physical presence" of the requester but must "fulfill [such] requests." *Id.* In addition, "[f]ulfillment of a request for a copy of a public record may be contingent upon receipt of payment of expenses to be incurred in fulfilling the request" as long as the estimated expenses are communicated at the time of the request. *Id.* (emphasis added). As relevant to the issue of recovering expenses, this is the version of the statute in effect when Teig made his requests. *See* Iowa Code § 22.3(1) (2021).

Thus, while the general assembly expressly refers to "copying," "examination," and "supervision" in section 22.3(1), as Teig points out, *id.*, it expanded access to public records by requiring custodians to fulfill requests made by phone or email. In doing so, it also provided for the recovery of "expenses . . . incurred in fulfilling the request." *Id.* Because fulfillment of a request necessarily includes the retrieval of the requested documents, we conclude the provision in effect when Teig made his requests allowed the City to recover its expenses in fulfilling them.

The parties and the district court considered the statute as it existed in 2023, after amendments that became effective on July 1, 2022 (after Teig's requests). *See* 2022 Iowa Acts ch. 1039, § 1 (codified at Iowa Code § 22.3 (2023)). To the extent those amendments have any relevance, they confirm our interpretation of the plain language of section 22.3 as it existed in 2021. *See, e.g., Iowa Individual Health Benefit Reins. Ass'n v. State Univ. of Iowa,* 876 N.W.2d 800, 805 (Iowa 2016) ("When an amendment to a statute adds or deletes words, a change in the law will be presumed *unless the remaining language amounts to the same thing.*" (emphasis added) (quoting *Davis v. State*, 682 N.W.2d 58, 61 (Iowa 2004))). The 2022 amendments limited expenses charged for fulfilling a request to "reasonable expenses," 2022 Iowa Acts ch. 1039, § 1 (codified at Iowa Code § 22.3(1) (2023)), and also directed custodians to "make every reasonable effort to provide the public record requested at no cost other than copying costs *for a record which takes less than thirty minutes to produce,*" *id.* (emphasis added). Thus, for requests taking more time to fulfill, the amendments to section 22.3(1) clarify that in addition to copying costs, custodians can charge for other expenses incurred in producing the records, as long as they are "reasonable and communicated to the requester upon receipt of the request." *Id.* The general assembly's continued use of the same word "expenses" in relation to recovery of

costs incurred in fulfilling a request for public records reveals that it considered such expenses to not be limited to copying costs, as Teig argues.

Teig also argues that the general assembly's use of the word "retrieval" in Iowa Code section 22.2(4)(*a*) precludes retrieval fees generally because it indicates that the general assembly "knew how to authorize retrieval fees" but chose not to do so. Again, we disagree. Section 22.2(4)(*a*) allows governmental bodies to restrict public access to "geographic computer database[s]," so long as they "establish reasonable rates and procedures for the retrieval" of requested documents. *Id.* This provision is not an authorization to charge retrieval fees generally, but it is part of a directive to governmental bodies to accommodate requests when public access to certain databases is restricted. That it authorizes retrieval fees in a specific context does not preclude recovery of what might be deemed "retrieval expenses" in a more general sense in a separate section expressly allowing recovery of expenses to fulfill a request for public records.

As Teig and the amici note, retrieval fees may in fact hamper access to public documents. However, such fees may also ensure continuing access to public records through increased funding and deterring excessive or overly broad requests. In any event, weighing these policy interests is for the general assembly. *See Press Club*, 421 N.W.2d at 897. We hold that in allowing for the recovery of expenses incurred in fulfilling requests for public records, Iowa Code section 22.3(1) authorizes reasonable fees for the time spent by the custodian or its employees in fulfilling the request.

4. *Refusal and unreasonable delay.* We turn now to Teig's claim that the defendants either refused or unreasonably delayed producing several requested documents. To sustain a cause of action under chapter 22, claimants must show "that the defendant[s] refused to make [requested] records available for examination and copying." Iowa Code § 22.10(2). While this language "speaks in terms

of a refusal rather than a delay in production," *Horsfield*, 834 N.W.2d at 463 n.6, we have also recognized that a defendant can "refuse" a request "by (1) stating that it won't produce records, or (2) showing that it won't produce records," *Belin v. Reynolds*, 989 N.W.2d 166, 174 (Iowa 2023). The second category of refusal "can be shown through an unreasonable delay in producing records." *Id.*

Chapter 22 requires custodians to provide access to requested documents promptly, but "[i]f the size or nature of the request . . . requires time for compliance, the custodian shall comply with the request as soon as feasible." *Horsfield*, 834 N.W.2d at 461 (quoting Iowa Unif. Rules on Agency Proc., No. X.3(4) (17A, 22) (1999)). Because the statute provides no explicit time constraint, "a reasonable time is implied." *Belin*, 989 N.W.2d at 175 (quoting 2B Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 55:3, at 457 (7th ed. 2012)). In *Belin*, we delineated six factors for determining whether there had been an unreasonable delay:

> (1) how promptly the defendant acknowledged the plaintiff's requests and follow-up inquiries, (2) whether the defendant assured the plaintiff of the defendant's intent to provide the requested records, (3) whether the defendant explained why requested records weren't immediately available . . . , (4) whether the defendant produced records as they became available . . . , (5) whether the defendant updated the plaintiff on efforts to obtain and produce records, and (6) whether the defendant provided information about when records could be expected.

*Id.*

Teig has three claims of undue delay concerning records we have not yet considered: (1) records related to the city attorney position, (2) instructions to direct Teig's open records request through the city attorney's office, and (3) information about the November 23 closed session by the city council. We discuss each in turn.

a. *Records related to the city attorney position.* Teig originally requested documents related to the city attorney position on October 21. After exchanging multiple emails with Feldmann, he narrowed his request on November 3. This narrowed list included: the legal opinion related to closing the October 12 city council session, applications for the city attorney position, requests by candidates "to close the interviews," and the job posting for the position. Having already discussed the legal opinion and applications above, we now consider the requests to close the interviews and the job posting.

On December 14, Hart informed Teig there were no responsive documents relating to candidate requests "to close the interviews." Despite this denial, Teig later received redacted copies of two requests by candidates. Hart's update was not erroneous though. The City did not close interviews for the city attorney position, nor was it asked to. Rather, applicants submitted requests for their applications *to be reviewed* in a closed session. Noticing Teig's inaccuracy, Chavez sent redacted copies of two requests that the applications be considered in a closed session a few weeks after taking office. Because Teig never requested these documents, there can be no finding of undue delay.

Teig also received his request for the city attorney job posting. Feldmann acknowledged the request on November 4, the day after Teig submitted it. She followed up again on November 10 and 24. Hart sent Teig the job posting on December 14. While this delay may not be the most expeditious, several of the relevant factors we identified in *Belin* weigh in favor of the defendants. *See id.* Feldmann responded to Teig's request the day after receiving it, provided multiple updates, and estimated when the documents may be ready. This conduct does not rise to the level of undue delay.

b. *Instructions on Teig's open records requests.* After taking over as city attorney in December of 2021, Chavez sent a message to City employees, asking

that all of Teig's future open records requests go through her office. Teig asked for these instructions on March 11, and Chavez provided them on March 18. Teig claims it should "have taken Defendant Chavez only seconds" to locate these documents. This demand for instantaneous compliance ignores the express language of chapter 22.

Section 22.8 allows custodians up to "twenty calendar days" to fulfill requests when it is necessary "[t]o determine whether a *confidential record* should be available for inspection and copying to the person requesting the right to do so." Iowa Code § 22.8(4)(*d*) (emphasis added). Chapter 22 further defines "confidential records" to include "the work product of an attorney, which are related to litigation." *Id.* § 22.7(4). Teig submitted this request several months after filing the present suit against the City. The document he sought was a communication between the city attorney and employees of the City relating to that litigation. When Chavez disclosed the document, she told Teig that "[a]lthough the record in question was drafted by an attorney, [she had] determined that this record contains no privileged or confidential communication." Chavez's delay was authorized under section 22.7(4).

c. *Records related to the November 23 closed session.* Finally, we consider Teig's request for documents related to the city council's November 23 closed session. The city council closed the session "to discuss strategy with legal counsel with regard to pending litigation." On December 6, Teig requested "records showing the name of the litigation, name of any attorney involved, and bills and expenditures related to the matter." Jacobi replied on December 8, claiming "the city ha[d] not yet received any invoices regarding this representation," but agreed to "examine them upon receipt to determine whether any redactions are necessary to preserve the attorney client privilege."

However, the record shows the City approved a payment of $3,167.50 to the law firm Lynch Dallas P.C. on December 7, with $2,167 of that total being paid the same day. On March 11, Teig acquired a redacted billing document related to the November 23 session directly from Lynch Dallas through discovery in this litigation in a file named: "FINAL APPROVED BILLINGS TO SEND TO TEIG APPROVED BY CITY." There is no indication the City kept Teig apprised of any updates between December 6 and March 11. On a review of a grant of summary judgment, we view evidence of these facts in the light most favorable to Teig. *See Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019).

In their brief, the defendants argue Teig did not file his lawsuit until the day after the closed session, and his request related only to "pending litigation." Thus, the defendants claim they were under no duty to disclose the requested documents that related instead to "imminent litigation." However, Teig's December 6 request does not mention "pending litigation." While there may not have been any "name of the litigation" to disclose, this does not affect Teig's request for the name of the attorney or billing records.

The defendants also argue that Teig has already received these documents, implying his claim has been mooted. We rejected a similar argument in *Belin*. *See* 989 N.W.2d at 171. There, we held that production of documents only mooted claims "*to produce* the already-produced records." *Id.* It does not prevent plaintiffs from pursuing "any other relief that may be available under the Act." *Id.*; *see also Kirkwood Inst.*, ___ N.W.3d at ___, 2024 WL 1813027, at * 6 (holding that plaintiff's "pursuit of a civil penalty, attorney fees, and court costs under chapter 22 based on a refusal to timely produce" requested documents was not mooted by eventual production of documents). Teig has brought claims for damages and injunctive relief, and section 22.10(3) authorizes both remedies.

We have previously declined to set an exact deadline for "undue delay," but our prior cases are instructive nonetheless. In *Belin*, delays ranging from five to eighteen months amounted to an undue delay. 989 N.W.2d at 169. In *Horsfield*, we found a violation of chapter 22 based on a seventy-day delay. 834 N.W.2d at 460, 462. Here, Teig waited more than ninety days to receive the redacted billing records. Reasonableness is often a fact question, and we conclude the district court—as the fact-finder—should address whether the delayed receipt of the billing records was an unreasonable delay in violation of chapter 22. *See Kirkwood Inst.*, ___ N.W.3d at ___, 2024 WL 1813027, at *7 (concluding fact issue precluded summary judgment with respect to whether delay in producing one email, eventually produced as part of litigation discovery 216 days after initial request and 106 days after petition was filed, was reasonable).

5. *Remedies.* Having determined that the defendants withheld some records required to be disclosed, we now consider what remedies are available to Teig. If a custodian refuses or unreasonably delays production, courts must enjoin the custodian to comply with the statute. Iowa Code § 22.10(3)(*a*). Courts are also required to assess damages under certain conditions and have discretion to "order the lawful custodian . . . to refrain for one year from any future violations" of the Open Records Act. *Id.* Successful plaintiffs are also entitled to "costs and reasonable attorney fees." *Id.* § 22.10(3)(*c*).

Because the defendants failed to disclose job applications from internal applicants, we conclude those applications must be disclosed pursuant to section 22.7(11), and Teig is entitled to costs and attorney fees related to those specific requests. While section 22.10(3)(*b*) requires courts to assess damages for violations generally, it prohibits such damages when custodians "[r]easonably relied upon a decision of . . . the attorney for the government body, given in

writing." *Id.* § 22.10(3)(*b*)(3). The record indicates that Flitz, Chavez's predecessor as city attorney, provided a letter to the city council explaining that job applications were confidential. Feldmann and Hart stated they received a copy of this letter in their affidavits. They accordingly are exempt from paying damages. *See id.* As for the one-year injunction against future violations of chapter 22, such a remedy is discretionary and to be applied only "if appropriate." *Id.* § 22.10(3)(*a*). Given the applicability of an exception to section 22.10's damages requirement and our previous guidance in *Press Club* concerning protection for job applications, we find this injunctive remedy is not appropriate.

As for Teig's claim of unreasonable delay, on remand he may pursue all relief authorized under the Act for any proved unreasonable delay in the fulfillment of his December 6, 2021 open records request.

Section 22.10(3)(*c*) requires courts to order a plaintiff's "costs and reasonable attorney fees, including appellate attorney fees," to be paid by defendants who are assessed damages. *Id.* § 22.10(3)(*c*). However, "[i]f no such persons exist . . . the costs and fees shall be paid . . . from the budget of the offending government body." *Id.* Here, no defendants are liable for damages for refusal to disclose job applications, and the City is therefore responsible for these costs and fees.

**III. Conclusion.**

For these reasons, we affirm in part and reverse in part the district court's grant of summary judgment. We also affirm the district court's denial of Teig's evidentiary motions. We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**